UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL HARBOUR, ET AL.

VERSUS

LOUIS ANTHONY SIRICO, ET AL.

CIVIL ACTION

NO. 18-1055-JWD-EWD

## **RULING ON MOTION TO INTERVENE**

Before the Court is a Motion to Intervene Pursuant to Rule 24 (the "Motion to Intervene")[1] filed by LL Hotels, LLC ("LL Hotels"). Plaintiffs, Michael Harbour ("Harbour") and Tasman Holdings, LLC ("Tasman") (collectively, "Plaintiffs"), have filed an opposition,[2] and LL Hotels has filed a Reply.[3] For the reasons set forth herein, the Motion to Intervene[4] is granted[5] and the Clerk is directed to file the Verified Complaint-in-Intervention[6] along with the exhibits attached thereto[7] into the record.

**I.   Background**

On October 25, 2018, Plaintiffs filed a Suit on Continuing Unconditional Guaranties (the "Petition") in state court against Louis Anthony Sirico ("Sirico") and Lisa Grace Loud ("Loud") (collectively, "Defendants") to recover certain amounts allegedly due pursuant to guarantees

---

[1] R. Doc. 21.

[2] R. Doc. 26.

[3] R. Doc. 29.

[4] R. Doc. 21.

[5] Magistrate judges may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). "A motion to intervene is considered a non-dispositive motion." *Johnson v. Qualawash Holdings, LLC*, No. 2:12CV-885, 2013 WL 3050021, at *2 (W.D. La. June 17, 2013) (citing *S.E.C. v. Koirnman*, Civ.A. 3:04CV1803, 2006 WL 148733, at *2 (N.D. Tex. Jan. 18, 2006)). *See also*, *Stephens v. State Farm and Cas. Co.*, Civil Action No. 07-2433, 2010 WL 1292719, at *3 (E.D. La. March 8, 2010) ("The portion of Road Home's motion seeking leave to intervene is a non-dispositive matter which I may address by order.").

[6] R. Doc. 21-2.

[7] R. Docs. 21-3 through 21-8.

1

executed by Defendants related to two primary loans in favor of LL Hotels for the purpose of renovating a Baton Rouge hotel.

Plaintiffs allege that Harbour is the holder and owner in due course of a promissory note executed by LL Hotels in the principal amount of $1,589,537,85 (the "Harbour Note")[8] and that Tasman is the holder and owner in due course of a promissory note executed by LL Hotels in the principal amount of $1,050,000.00 (the "Tasman Note").[9] Plaintiffs allege that in connection with both Notes, Defendants executed "Continuing Unconditional Guarantee" agreements (the "Guarantees") by which "Sirico and Loud absolutely and unconditionally guaranteed, on a solidary or joint and several basis with [LL Hotels], the full and punctual payment and satisfaction of the indebtedness" owed by LL Hotels to either Harbour or Tasman.[10] Plaintiffs further allege that the Harbour Note was secured by a Multiple Indebtedness Mortgage, and that following seizure and sale of the mortgaged property and application of a resulting $262,500.00 credit, LL Hotels owes Harbour a total of $2,068,026.79 with continuing interest.[11] With respect to the Tasman Note, Plaintiffs allege that LL Hotels owes Tasman a total of $1,710,528.75 with continuing interest.[12] Based on the Guarantees, Plaintiffs seek to recover these amounts from Sirico and Loud.[13]

On November 30, 2018, Defendants filed a Notice of Removal based on the assertion that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 "since the parties to this case are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and

---

[8] R. Doc. 1-2, ¶ 3.
[9] R. Doc. 1-2, ¶ 11.
[10] R. Doc. 1-2, ¶¶ 4 & 13.
[11] R. Doc. 1-2, ¶¶ 5-9.
[12] R. Doc. 1-2, ¶ 14.
[13] R. Doc. 1-2, ¶¶ 10 & 15.

2

costs."[14] Defendants filed an Amended Notice of Removal on December 17, 2018 wherein they allege they are both domiciled in Quebec, Canada,[15] and that Harbour and Tasman are both citizens of California.[16] On February 14, 2019, LL Hotels filed the instant Motion to Intervene[17] seeking to intervene as of right pursuant to Fed. R. Civ. P. 24(a). Alternatively, LL Hotels seeks to permissively intervene pursuant to Fed. R. Civ. P. 24(b).[18] Plaintiffs' opposition to the Motion to Intervene does not address the requirements for intervention under either Rule 24(a) or 24(b); instead, Plaintiffs contend that the Motion to Intervene must be denied because this Court lacks subject matter jurisdiction over LL Hotels' claims and argues that LL Hotels is not, pursuant to Fed. R. Civ. P. 19(a), a necessary party.[19]

Per the proposed Complaint-in-Intervention, LL Hotels alleges that Sirico and Loud formed LL Hotels "as a vehicle through which to purchase a hotel in Louisiana"[20] and that renovations to the hotel "were to be funded in significant part through a loan provided by Harbour."[21] LL Hotels asserts that it contracted with Matt Morris ("Morris") of Complete Construction Contractors, LLC ("Complete Construction") to complete the remodeling of the hotel and that Complete Construction was originally required to submit its invoices to a third party inspector, Michael Stein ("Stein"), prior to Sirico, Loud, or a previous investor in the hotel, Nancy

---

[14] R. Doc. 1, ¶ 10.

[15] R. Doc. 3, ¶¶ 8-9.

[16] Specifically, Defendants allege that Harbour is domiciled in California and that Harbour is the sole member of Tasman. R. Doc. 3, ¶¶ 4 & 6.

[17] R. Doc. 21.

[18] R. Doc. 21, p. 1. Although LL Hotels states that it seeks to permissively intervene pursuant to Rule 24(b)(2), that section addresses intervention by a government officer or agency and is not applicable here. LL Hotels' briefing indicates that it seeks to permissively intervene because it "has a claim or defense that shares with the main action a common question of law or fact." *See*, R. Doc. 21, pp. 6-7, Fed. R. Civ. P. 24(b)(1)(B).

[19] R. Doc. 26.

[20] R. Doc. 21-2, ¶ 11.

[21] R. Doc. 21-2, ¶ 2.

3

Chillag ("Chillag"), authorizing payment to Complete Construction.[22] Despite this initial arrangement, following Chillag's withdrawal of her investment, LL Hotels and Harbour executed an amendment to the Harbour Note which provided, *inter alia*, that Harbour would pay Complete Construction directly.[23] LL Hotels alleges that Harbour then "caused two wire transfers to be made directly to Complete Construction totaling in excess of $1 million"[24] "for work that had not been verified by Stein" thereby "drastically reducing the funds available for LL Hotels to complete the project."[25] LL Hotels further asserts that when finally inspected, the work done by Complete Construction was "woefully inadequate" and that Complete Construction was terminated as the contractor for the hotel.[26]

LL Hotels alleges that because of the payments made directly to Complete Construction for inadequate work, Sirico and Loud negotiated with Harbour "to come to a revised arrangement" and "sought to secure substitute funding that would allow LL Hotels to retire its debt to Harbour."[27] LL Hotels alleges that despite Harbour's multiple representations that he was willing to "work with Defendants and LL Hotels to avoid foreclosure and achieve an amicable resolution to retire his loan through a new loan with a substitute lender,"[28] Harbour was actually "working behind the scenes" to injure Defendants' and LL Hotels' interest in the hotel.[29] Specifically, LL Hotels asserts

---

[22] R. Doc. 21-2, ¶ 19. LL Hotels alleges that Chillag withdrew her investment and association with LL Hotels approximately two months after agreeing to the investment. R. Doc. 21-2, ¶¶ 16 & 20. LL Hotels further alleges that prior to her withdrawal from the project, Chillag had orally authorized $500,000.00 worth of change orders which at the time of Chillag's departure, Complete Construction asserted were almost completed. R. Doc. 21-2, ¶ 20.

[23] R. Doc. 21-2, ¶ 21.

[24] R. Doc. 21-2, ¶ 23.

[25] R. Doc. 21-2, ¶ 24.

[26] R. Doc. 21-2, ¶ 25.

[27] R. Doc. 21-2, ¶¶ 26-27. LL Hotels further alleges that efforts to secure substitute funding "were complicated when Complete Construction filed liens in bad faith." R. Doc. 21-2, ¶ 27.

[28] R. Doc. 21-2, ¶ 30.

[29] R. Doc. 21-2, ¶ 28.

4

that after providing Harbour with a copy of an appraisal showing the hotel's "upon completion" and "upon stabilization" market values, Harbour secretly purchased LL Hotels' loan and thereafter refused to allow another bank to pay off the first mortgage "thereby torpedoing the new funding arrangement that Defendants and LL Hotels had worked so hard to secure."[30]

"Despite all of the challenges caused by Harbour and his cohorts," LL Hotels alleges that "Defendants and LL Hotels managed to keep the hotel running as a going concern" until May 3, 2016, when "Harbour's attorney and members of a private security firm" demanded Sirico immediately vacate the hotel.[31] LL Hotels asserts that "Harbour's agents then closed the hotel and forced the guests to leave, thereby causing significant damage to its good will" and further "failed to secure the property, leaving the hotel open for looters."[32] "As a direct and foreseeable result" of vandalization and looting, LL Hotels asserts that the value of the hotel was greatly decreased and that the credit LL Hotels received *via* the foreclosure sale of the mortgaged property was "far less" than it should have been.[33] LL Hotels contends that Harbour was "in league" with Morris and Chillag "to strip LL Hotels of its interest in the hotel, obtain the property at a discount, and then secure a double-recovery by suing Defendants on their personal guarantees."[34]

Based on these factual allegations, through its proposed Verified Complaint-In-Intervention, LL Hotels seeks to assert claims of, *inter alia*, breach of contract (based on Harbour's

---

[30] R. Doc. 21-2, ¶ 33.

[31] R. Doc. 21-2, ¶ 34.

[32] R. Doc. 21-2, ¶ 35.

[33] R. Doc. 21-2, ¶ 35.

[34] R. Doc. 21-2, ¶ 36. LL Hotels alleges that "Morris has bragged to third parties that he had an arrangement with Harbour and Chillag whereby he would finish the renovations once LL Hotels has been forced out as owner" and that "Morris was convicted of a similar scheme to defraud homeowners by filing inflated liens. In particular, Morris took advantage of flood victims by inflating bills to ensure that he was paid all available insurance funds while leaving the homeowners with uncompleted work. Morris would then file exaggerated liens based on the inflated bills." R. Doc. 21-2, ¶¶ 36 & 37. LL Hotels alleges that Morris used "the same formula" here, and that "he in engaged in the scam here with the knowledge and participation of Harbour (and Chillag)." R. Doc. 21-2, ¶ 38.

5

alleged unauthorized payments of loan proceeds to Complete Construction),[35] breach of fiduciary duty (based on "waste of the mortgage collateral"),[36] fraud (based on Harbour's alleged blocking of LL Hotels' substitute funding),[37] detrimental reliance,[38] unjust enrichment,[39] breach of good faith and fair dealing,[40] and tortious interference with business relations.[41] The same factual allegations supporting LL Hotels' claims were set out in Defendants' previously filed (and now withdrawn) Counterclaim[42] and form the basis of many of Defendants' affirmative defenses.[43]

## II. Law and Analysis

### A. LL Hotels Is Aligned with Defendants and Therefore the Court May Exercise Supplemental Jurisdiction Over LL Hotels' Claims

The Court's subject matter jurisdiction in based in diversity. Per the Amended Notice of Removal, Plaintiffs are citizens of California and Defendants are citizens of Canada.[44] Although

---

[35] R. Doc. 21-2, ¶¶ 45-47.

[36] R. Doc. 21-2, ¶¶ 48-51.

[37] R. Doc. 21-2, ¶¶ 52-56.

[38] R. Doc. 21-2, ¶¶ 57-63.

[39] R. Doc. 21-2, ¶¶ 64-65.

[40] R. Doc. 21-2, ¶¶ 66-69.

[41] R. Doc. 21-2, ¶¶ 70-71.

[42] R. Doc. 10, ¶¶ 1-36. On February 12, 2019, Defendants filed a Rule 41(a) Notice of Voluntary Dismissal without Prejudice dismissing their counterclaims without prejudice. R. Doc. 17. In its Motion to Intervene, LL Hotels asserts that "following further investigation, counsel has concluded that while the Defendants-in-Intervention's [Harbour's and Tasman's] conduct is relevant to Defendants' affirmative defenses, the claims themselves are properly asserted by LL Hotels. Accordingly, Defendants dismissed the counterclaims without prejudice under Rule 41 and LL Hotels now moves this Court to propound these claims via a Complaint-in-Intervention." R. Doc. 21, pp. 3-4.

[43] R. Doc. 10, pp. 20-21, First Affirmative Defense ("Plaintiffs' recovery is barred by Harbour's prior material breaches, including, but not limited to, the payment of more than $1 million in loan proceeds directly to Complete Construction without following the procedures set forth in the parties' contracts."); Second Affirmative Defense ("Plaintiffs' recovery is barred by the doctrine of unclean hands in connection with, *inter alia*, the equitable remedy of foreclosure."); Third Affirmative Defense ("Plaintiff's recovery is barred and/or subject to set off by virtue of the fact that Plaintiffs engaged in waste of the collateral."); Fifth Affirmative Defense ("Plaintiffs' recovery is barred and/or subject to set off by reason of Harbour's breach of fiduciary duty in connection with the foreclosure."); Sixth Affirmative Defense ("Plaintiffs' recovery is barred and/or subject to set off by virtue of the fact that they were unjustly enriched at the expense of Defendants and LL Hotels.").

[44] R. Doc. 3.

LL Hotels does not adequately allege its own citizenship in either its Motion to Intervene or the proposed Complaint-in-Intervention,[45] it asserts that its intervention "will destroy diversity, because certain of its members are citizens of California, as is, upon information and belief, Harbour"[46] and therefore its intervention will require remand to state court.[47] While Plaintiffs dispute LL Hotels' statement of citizenship,[48] they argue that the Motion to Intervene should be denied because "this Court does not have subject matter jurisdiction over LL Hotels' claims,"[49] because "[i]t is a matter of black letter law that the court does not have supplemental jurisdiction over a plaintiff-intervenor's claims where intervention would destroy diversity jurisdiction."[50] Because the Court aligns LL Hotels as a defendant in this action, supplemental jurisdiction extends to LL Hotels' claims and LL Hotels' intervention would not require remand.

28 U.S.C. § 1367(a) provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that

---

[45] To properly allege the citizenship of a limited liability company or other type unincorporated association, a party must identify each of the members of the association and the citizenship of each member in accordance with the requirements of § 1332(a) and (c). *See*, *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); 13F Fed. Prac. & Proc. Juris § 3630.1 (3d ed.) ("whenever a partnership, a limited partnership, a joint venture, a joint stock company, a labor union, a religious or charitable organization, a governing board of an unincorporated institution, or a similar association brings suit or is sued in a federal court, the actual citizenship of each of the unincorporated association's members must be considered in determining whether diversity jurisdiction exists.") (internal citations omitted). The same requirement applies to any member of a limited liability company or other type of unincorporated association which is also a limited liability company or unincorporated association. *See*, *Turner Bros. Crane and Rigging, LLC v. Kingboard Chemical Holding Ltd.*, Civil Action No. 06-88, 2007 WL 2848154, at *4-5 (M.D. La. Sept. 24, 2007) ("when partners or members are themselves entities or associations, the citizenship must be traced through however many layers of members or partners there may be, and failure to do [sic] can result in dismissal for want of jurisdiction.") (quotation and citation omitted).

[46] R. Doc. 21, ¶ 7.

[47] R. Doc. 21, ¶ 7 ("a remand to state court will not prejudice the Defendants-in-Intervention, because they originally commenced this action in state court.").

[48] R. Doc. 26, p. 1, n. 1.

[49] R. Doc. 26, p. 1.

[50] R. Doc. 26, p. 2.

> they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

"The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'"[51] Here, LL Hotels' claims form part of the same case or controversy because LL Hotels' proposed claims "concern the same core factual issue"[52] as that raised in the current litigation. Plaintiffs seek to recover monies allegedly owed to them pursuant to Guarantees related to the Harbour and Tasman Notes executed by LL Hotels. Plaintiffs allege that LL Hotels owes a total of $2,068,026.79 with continuing interest to Harbour[53] and a total of $1,710,528.75 with continuing interest to Tasman.[54] Based on Defendants' Guarantees related to the two Notes, Plaintiffs seek to recover these same amounts from Sirico and Loud.[55] LL Hotels seeks to assert claims through its intervention that could operate as a set off of any amounts LL Hotels owes under the Notes (and therefore any amounts owed by the Defendants). The Defendants have also asserted affirmative defenses to this suit based on the same facts.

"That does not end the inquiry, however"[56] because the Court must also "'examine § 1367(b) to determine if any of its exceptions apply....'"[57] Pursuant to 28 U.S.C. § 1367(b), "[i]n

---

[51] *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).

[52] *Id.*

[53] R. Doc. 1-2, ¶¶ 5-9.

[54] R. Doc. 1-2, ¶ 14.

[55] R. Doc. 1-2, ¶¶ 10 & 15.

[56] *Griffin v. Lee*, 621 F.3d 380, 385 (5th Cir. 2010).

[57] *Id.* (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559-560 (2005)).

any civil action of which the district courts have original jurisdiction founded solely on section 1332…the district courts shall not have supplemental jurisdiction…over claims by persons…seeking to intervene *as plaintiffs* under Rule 24…when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."[58] Accordingly, the exception to the exercise supplemental jurisdiction applies only if LL Hotels is seeking to intervene as a plaintiff in this matter (and then only if LL Hotels' citizenship is not diverse from Defendants).[59] Although LL Hotels' citizenship is not set out in any of the pleadings and is not clear,[60] LL Hotels' citizenship is not relevant and the exception to the exercise of supplemental jurisdiction set out in § 1367(b) is inapplicable because the Court aligns LL Hotels as a defendant.

"In this Circuit, 'the generally accepted test of proper alignment is whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side.'"[61] "To that end, [the Court] must 'look beyond the pleadings, and arrange the parties according to their sides in the

---

[58] Emphasis added.

[59] *See*, *Griffin*, 621 F.3d at 386 (instructing district court to dismiss a petition of intervention filed by a non-diverse party aligned as a plaintiff and explaining that "while Congress codified the concepts of pendent and ancillary jurisdiction in § 1367(a), it apparently chose to circumscribe such jurisdiction in § 1367(b) with respect to plaintiff intervenors."); *Brown v. Sullair, LLC*, Docket No. 13-cv-2388, 2015 WL 9261354, at * 2 (W.D. La. Nov. 17, 2015) ("When a party who would destroy diversity seeks to intervene as a plaintiff, the court must deny the motion.").

[60] Based on LL Hotels' assertion that it was created by Sirico and Loud "as a vehicle through which to purchase a hotel in Louisiana," R. Doc. 21-2, ¶ 11, as well as Plaintiffs' allegation that the Harbour and Tasman Notes were executed by LL Hotels "by its duly authorized Managing Member, Louis Sirico," R. Doc. 1-2, ¶¶ 3 & 11, it appears that LL Hotels may be a citizen of Canada as it would take on the citizenship of its members. LL Hotels contends in its Motion to Intervene that LL Hotels' intervention "will destroy diversity, because certain of its members are citizens of California, as is, upon information and belief, Harbour." R. Doc. 21, ¶ 7. Plaintiffs assert that "[u]pon information and belief, all of the membership interests in LL Hotels are in fact owned by Martin Schott, the Trustee in Sirico's bankruptcy suit" and that "[b]ecause Schott is a resident of Louisiana, LL Hotels' suit cannot destroy diversity." R. Doc. 26, p. 1, n. 1.

[61] *Griffin*, 621 at 388 (quoting *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984)).

dispute' to ensure that the parties have a 'collision of interest[s]' over the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'"[62]

Here, the principal purpose of Plaintiffs' suit is to recover monies allegedly due pursuant to the Guarantees executed by Sirico and Loud. Defendants assert as defenses to Plaintiffs' action that Plaintiffs' recovery is barred "by Harbour's prior material breaches, including, but not limited to, the payment of more than $1 million in loan proceeds directly to Complete Construction without following the procedures set forth in the parties' contracts;" "the doctrine of unclean hands in connection with, *inter alia*, the equitable remedy of foreclosure;" "waste of the collateral;" and "Harbour's breach of fiduciary duty in connection with the foreclosure."[63] Like Defendants, LL Hotels seeks to bar or limit Plaintiffs' recovery of the same amounts (albeit allegedly due pursuant to the Harbour and Tasman Notes) based on the same allegedly unscrupulous acts committed by Plaintiffs. Accordingly, there is a "collision of interests" as between Plaintiffs on the one side and Defendants and LL Hotels on the other. Based on this party alignment, this Court can exercise supplemental jurisdiction over LL Hotels' claims pursuant to 28 U.S.C. § 1367(a), and the exception set out in § 1367(b) (which applies only to claims brought by persons seeking to

---

[62] *Chesapeake Louisiana, LP v. Buffco Production, Inc.*, 564 Fed. Appx. 751, 755 (5th Cir. May 7, 2014) (unpubl.) (quoting *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941)). The Fifth Circuit has also indicated that a party seeking "affirmative relief" rather than intervening "to protect its interests as a defendant" may be considered an intervenor plaintiff for purposes of proper alignment. *See*, *Cheasapeake*, 564 Fed. Appx. at 756. Because use of such an "affirmative claims" test could result in an alignment opposite of that when the "principal purpose of the suit" analysis is done, the Court uses the "principal purpose" test here. *See also*, *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 580 (5th Cir. 2004) ("The fact that [defendant] has asserted a counterclaim does not make him a 'plaintiff' for purposes of § 1367(b). Although we have not directly addressed this issue in the past, today we hold that 'plaintiff' in § 1367(b) refers to the original plaintiff in the action—not to a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party plaintiff. In doing so, we follow the numerous other circuits that have come to the same conclusion.")

[63] R. Doc. 10, p. 20.

intervene as plaintiffs) does not apply.[64]  Accordingly, LL Hotels' intervention does not destroy this Court's subject matter jurisdiction.[65]

### B. LL Hotels May Intervene Pursuant to Fed. R. Civ. P. 24(b)

#### i. The Motion to Intervene is Timely

As noted above, LL Hotels seeks to intervene as of right pursuant to Rule 24(a) or alternatively, to permissively intervene pursuant to Rule 24(b). "Whether leave to intervene is sought under section (a) or (b) of Rule 24, the application must be timely."[66] The timeliness of a motion to intervene is a matter committed to the sound discretion of the trial court.[67] Timeliness "is not limited to chronological considerations but 'is to be determined from all the

---

[64] *See*, *Griffin*, 621 F.3d 380 ("As previously noted, the Third Circuit has held that if an intervenor is realigned as a defendant, § 1367(b) does not deprive the district court of supplemental jurisdiction over a counterclaim raised by the intervening defendant, even where the requirements of § 1332 are not met.") (citing *Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 161 (3d Cir. 1995) ("We conclude that § 1367(b) does not deprive the district court of supplemental jurisdiction over a counterclaim or cross-claim raised by an intervening defendant, even where the intervenor shares citizenship with an original party.")); *Grimes v. Mazda North American Operations*, 355 F.3d 566, 572 (6th Cir. 2004) ("The supplemental jurisdiction provision, 28 U.S.C. § 1367(b), states congressional intent to prevent original plaintiffs—but not defendants or third parties—from circumventing the requirements of diversity."); *Langone v. Flint Ink North America Corp.*, 231 FRD 114, 117 (D. Mass. 2005) ("Title 28 U.S.C. § 1367, the supplemental jurisdiction statute, makes different provisions for plaintiff-intervenors and for defendant-intervenors, and the weight of authority permits the exercise of supplemental jurisdiction over defendant-intervenors, even where diversity is lacking."); *Cole Mechanical Corp. v. National Grange Mutual Ins. Co.*, 06 Civ. 2875, 2008 WL 11395565, at * 5 (S.D.N.Y. Aug. 13, 2008) ("Because there is no dispute that Cyan's counterclaims 'form part of the same case or controversy' as those in Cole's complaint, and Section 1367(b) does not prohibit nondiverse claims by Rule 24(a) intervening defendants, this Court may also exercise supplemental jurisdiction over Cyan's claims against Cole."). *See also*, *Wichita R. & Light Co. v. Public Utilities Commission of the State of Kan.*, 260 U.S. 48, 53-54 (1922) ("The intervention of the Kansas Company, a citizen of the same state as the Wichita Company, its opponent, did not take away the ground of diverse citizenship. That ground existed when the suit was begun and the plaintiff set it forth in the bill as a matter entitling it to go into the District Court. Jurisdiction once acquired on that ground is not divested by a subsequent change in the citizenship of the parties.").

[65] Because this Court may exercise supplemental jurisdiction over LL Hotels' claims, it is not necessary to consider whether LL Hotels is "a person required to be joined" and who "cannot be joined" pursuant to Fed. R. Civ. P. 19(b). *See*, *Youngblood v. Rain CII Carbon, LLC*, No. 12-cv-287, 2014 WL 2547588, at * 4 (W.D. La. June 4, 2014) ("when faced with a diversity-destroying potential intervenor, we are required to consider whether the party seeking to intervene is a required party under Rule 19. When the diversity-destroying potential intervenor is a required party in whose absence an adequate judgment cannot be rendered, under Rule 19, the lawsuit cannot proceed in that party's absence and the suit must be dismissed for lack of complete diversity.").

[66] *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).

[67] *McDonald v. E.J. Lavino*, 430 F.2d 1065, 1071 (5th Cir. 1970).

circumstances.'"[68] The Fifth Circuit has set forth four factors to consider when evaluating whether a motion to intervene is timely: (1) the length of time during which the proposed intervenor should have known of his interest in the case before he petitioned to intervene; (2) the extent of prejudice that those parties already in the litigation would suffer "as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;" (3) the extent of prejudice to the proposed intervenor if he is not allowed to intervene; and (4) the existence of "unusual circumstances militating either for or against a determination that the application is timely."[69]

Here, Plaintiffs filed suit on October 25, 2018.[70] The case was removed by Defendants on November 30, 2018.[71] No scheduling conference is currently set.[72] Plaintiffs do not contend that the Motion to Intervene is untimely, nor is there any assertion that any party would be prejudiced if LL Hotels intervenes. Given the early procedural posture of this suit, the Court finds that the Motion to Intervene is timely.

### ii. LL Hotels May Intervene Pursuant to Rule 24(b)

Plaintiffs do not address any of the requirements for intervention pursuant to Rule 24 and instead focus on the potential jurisdictional defect in LL Hotels' proposed intervention. Because LL Hotels may permissively intervene pursuant to Rule 24(b), it is not necessary to also consider whether LL Hotels can also intervene as of right pursuant to Rule 24(a)(2).[73]

---

[68] *Stallworth*, 558 F.2d at 263.

[69] *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (citing *Stallworth*, 558 F.2d at 264-266).

[70] R. Doc. 1-2.

[71] R. Doc. 1. At the time of removal, Defendants were proceeding *pro se*. They are now represented by the same counsel as LL Hotels.

[72] *See*, R. Doc. 24. The previous scheduling conference was canceled in light of the pending Motion to Set Aside Default and the instant Motion to Intervene.

[73] *See*, *Securities and Exchange Commission v. Stanford International Bank, Ltd.*, Civil Action No. 3:09-cv-298, 2010 WL 11492410, at * 1 (N.D. Tex. Jan. 6, 2010) ("Susan Stanford argues that she has a right to intervene under Federal

12

Pursuant to Rule 24(b), LL Hotels may be allowed to permissively intervene if: (1) the Motion to Intervene is timely;[74] (2) LL Hotels "has a claim or defense that shares with the main action a common question of law or fact;"[75] and (3) the Court determines that allowing the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."[76] "Permissive intervention 'is wholly discretionary with the [district court]…even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'"[77] "Rule 24(b) necessarily vests broad discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims."[78]

As stated above, the Court finds that the Motion to Intervene is timely. Further, for the same reasons LL Hotels' proposed claims form part of the same case or controversy for purposes of the exercise of supplemental jurisdiction, LL Hotels' proposed claims share common questions of law and fact with the main action. Finally, LL Hotels' intervention will not prejudice other

---

Rule of Civil Procedure 24(a). The Court need not address this argument because, regardless of whether she has a right to intervene under Rule 24(a), it would exercise its discretion to allow intervention under Rule 24(b)."); *Ryder Transportation Services v. MAALT, LP*, Civil Action No. 3:15-cv-3325. 2016 WL 11372210, at * 2 (N.D. Tex. July 5, 2016) ("Because the Court grants MSB's motion under Rule 24 (b), it does not address MSB's arguments under Rule 24(a).").

[74] Fed. R. Civ. P. 24(b)(1).

[75] Fed. R. Civ. P. 24(b)(1)(B).

[76] Fed. R. Civ. P. 24(b)(3).

[77] *Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (quoting *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir.) (en banc)).

[78] *Securities and Exchange Commission*, 2010 WL 11492410, at * 2 (citing *S.E.C. v. Everest Mgmt. Co.*, 475 F.2d 1236, 1240 (2d Cir. 1972)). The Fifth Circuit has stated that factors a court may consider in exercising its discretion include "whether the intervenors interests are adequately represented by other parties and whether intervention will unduly delay the proceedings or prejudice existing parties." *Kneeland*, 806 F.2d at 1289. The *Kneeland* court explained that "[t]his circuit holds that when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Id*. at 1288. Here, it appears that LL Hotels and Defendants have the same ultimate objective – to challenge the amounts allegedly due to Plaintiffs (albeit under the Harbour or Tasman Notes rather than the Guarantees). Notwithstanding the adequacy of representation, considering the early procedural posture of this case and the commonality of law and fact as between the proposed Complaint in Intervention and the defenses raised by Defendants, it is appropriate for this Court to exercise its discretion to allow permissive intervention pursuant to Rule 24(b).

parties. As noted above, this case is in its early procedural stages. While it appears that LL Hotels and Defendants are, for many purposes, one in the same,[79] Plaintiffs do not contest LL Hotels' assertion that the claims asserted in the proposed Complaint in Intervention "are properly asserted by LL Hotels" rather than by the individual Defendants.[80] Moreover, if LL Hotels is not allowed to intervene in this suit, disposition of the issue of the amount owed by the Defendants would proceed without LL Hotels' involvement.[81] Given the related nature of Defendants' and LL Hotels' assertions, and the fact that both Defendants' affirmative defenses and LL Hotels' proposed claims in intervention challenge the amounts due to Harbour and Tasman, LL Hotels may permissively intervene in this action pursuant to Rule 24(b).[82]

---

[79] LL Hotels alleges that Sirico and Loud formed LL Hotels "as a vehicle through which to purchase a hotel in Louisiana" R. Doc. 21-2, ¶ 11. The Harbour Note was signed by Sirico as "managing member" of LL Hotels. R. Doc. 7-3, p. 4. An amendment to the Harbour Note was signed by Sirico, R. Doc. 7-3, p. 6, as was an "Unanimous Consent of Sole Member of LL Hotels, LLC." R. Doc. 78-3, p. 7. The Tasman Note was signed by Sirico. R. Doc. 7-5, p. 7. As guarantors, Sirico and Loud could, under Louisiana law, assert many of the same defenses to the principal demand available to LL Hotels. *See*, La. C.C. art. 3046 (a "surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert except lack of capacity or discharge of the principal obligor.").

[80] *See*, R. Doc. 21, ¶ 6.

[81] Both Guarantees guarantee "to Lender, as primary obligor and not merely as surety, the performance of and full and prompt payment of the Liabilities" and define "Liabilities" as "all debts, obligations, indebtedness and liabilities of every kind and character of" LL Hotels. R. Doc. 7-3, p. 8; R. Doc. 7-5, p. 8. As explained by one court, "[a]lthough it is true…that a guarantor can be held liable for an underlying obligation even when that obligation cannot be enforced against the principal obligor, it does not follow that a guarantor can be held liable when there is no obligation or liability in the first place." *Ryder*, 2016 WL 11372210, at * 4. *See also*, *Commercial Nat. Bank in Shreveport v. Pipe Sales of Shreveport*, 600 So.2d 130, 132 (La. App. 2 Cir. 1992) ("The jurisprudence has consistently considered a continuing guaranty contract to be equivalent to a contract of suretyship. The traditional civil law concept of suretyship creates a liability accessory to that of the principal debtor. LSA–C.C. Art. 3035 defines suretyship as an accessory contract to fulfill the obligation of another who has failed to perform.") (internal citations omitted).

[82] *See*, *Ryder*, 2016 WL 11372210, at *2 (allowing lessee to intervene in action filed by lessor against guarantors and explaining that "[e]ven if [plaintiff leasor's] argument that it does not need to prove [lessee's] liability before collecting from Guarantors has merit, however, [lessee] "has a claim that shares with the main action a common question of law or fact." See Fed. R. Civ. P. 24(b). Specifically, [lessee's] claim that [lessor] materially breached the Tractor Lease before [lessee] ceased making payments under the Tractor Lease shares common questions of law and fact with the present action. Accordingly, the Court grants [lessee's] motion to intervene under Rule 24(b). Because the Court grants [lessee's] motion under Rule 24(b), it does not address [lessee's] arguments under Rule 24(a).").

### III. Conclusion

For the reasons set forth herein, the Motion to Intervene Pursuant to Rule 24[83] is **GRANTED** and the Clerk is directed to file the Verified Complaint-in-Intervention[84] along with the exhibits attached thereto[85] into the record.

Signed in Baton Rouge, Louisiana, on May 31, 2019.

                                        **ERIN WILDER-DOOMES**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[83] R. Doc. 21.

[84] R. Doc. 21-2

[85] R. Docs. 21-3 through 21-8.