UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL HARBOUR AND TASMAN　　　　　　　NO. 18-CV-01055-JWD-EWD
HOLDINGS, LLC

VERSUS

LOUIS ANTHONY SIRICO AND LISA
GRACE LOUD

## RULING AND ORDER

Before the Court are two motions: (1) the Motion for Entry of Default Judgment of Plaintiffs, Michael Harbour and Tasman Holdings, LLC (collectively "Plaintiffs", or individually "Harbour" and/or "Tasman"); and (2) the Motion to Set Aside Clerk's Entry of Default pursuant to Rule 55(c) of Defendants, Louis Anthony Sirico and Lisa Grace Loud (collectively "Defendants", or individually "Sirico" and/or "Loud"). (Doc. 12). Plaintiffs opposed Defendants' motion. (Doc. 16). Defendants replied. (Doc. 25). Oral argument is not necessary. Having carefully considered the law, facts in the record, and arguments of the parties, the Court is prepared to rule. Plaintiffs' motion for entry of default judgment is denied as moot, and Defendants' motion to set aside the entry of default is granted.

I. **Relevant Factual and Procedural Background**

Plaintiffs filed a Suit on Continuing Unconditional Guaranties in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, on October 25, 2018, adverse to Defendants. (Doc. 1-2). Defendants sought removal of this matter to this Court on November 30, 2018, which was ordered on December 3, 2018. (Doc. 1 and 2). Harbour is the purported holder and owner of a promissory note dated February 5, 2015, and executed by LL Hotels, LLC, whose managing member is Defendant Sirico. The note is payable to Harbour in the original principal

1

amount of over $1.5 million. (Doc. 1-2, ¶ 3). Plaintiffs claim that as a "material inducement" to Harbour to lend to LL Hotels and Defendants, each executed certain guaranty agreements in favor of Harbour, pursuant to which Defendants agreed on a solidary or joint and several basis with LL Hotels, the "full and punctual payment and satisfaction of the indebtedness" of LL Hotels. (Doc. 1-2, ¶ 4). The note was further secured by a mortgage dated Feburary 5, 2015, executed by LL Hotels in favor of Harbour. (Doc. 1-2, ¶ 5). Harbour commenced a suit for executory process on May 3, 2016, pursuant to which the court ordered the issuance of a writ of seizure and sale to the Sheriff of East Baton Rouge Parish. (Doc. 1-2, ¶ 6). After an appraisal, the property described in the mortgage was sold by sheriff's auction on November 2, 2016, to Harbour. (Doc. 1-2, ¶ 7). LL Hotels alleges that it is entitled to a credit of half of the appraised value on the amount due on the promissory note. (Doc. 1-2, ¶ 8). Harbour claims that LL Hotels is indebted to Harbour for a total amount in excess of $2 million. (Doc. 1-2, ¶ 9). As unconditional guarantors, Harbour claims that Defendants are indebted to Harbour under the note for the full amount in excess of $2 million. (Doc. 1-2, ¶ 10).

Similarly, Tasman is the purported holder and owner of a promissory note dated April 14, 2014, and executed by LL Hotels, LLC, whose managing member is Defendant Sirico. The note is payable to Tasman in the original principal amount of over $1 million. The original lender, Maple Bridge Funding, LLC, transferred the note to Ability Insurance Company, who thereafter transferred the note to Tasman on February 26, 2016. (Doc. 1-2, ¶ 11). Plaintiffs claim that as a "material inducement" to lend to LL Hotels and Defendants, each executed certain guaranty agreements in favor of the original lender which was assigned to Tasman by virtue of the transfer of the note. (Doc. 1-2, ¶ 12). Under the Tasman guaranties, Defendants unconditionally guaranteed, on a "solidary or joint and several basis with" LL Hotels, the full and punctual payment

and satisfaction of the indebtedness of LL Hotels to Tasman. (Doc. 1-2, ¶ 13). As of October 23, 2018, Plaintiffs allege that LL Hotels was indebted to Tasman on the note for a total amount in excess of $1.7 million. (Doc. 1-2, ¶ 14). As unconditional gurantors, Plaintiffs claim that Defendants are indebted to Tasman under the note for the full amount in excess of $1.7 million. (Doc. 1-2, ¶ 15).

Plaintiffs claim that since they filed their Notice of Removal on November 30, 2018, Defendants' responsive pleadings were due seven days thereafter pursuant to Fed. Rule of Civ. Proc. 81(2)(C). When no responsive pleadings were filed by December 7, 2018, Plaintiffs filed a Motion for Clerks Entry of Default on December 18, 2018. (Doc. 5). The Clerk entered a default on December 19, 2018. (Doc. 6). Plaintiffs then filed a Motion for Default Judgment on January 3, 2019. (Doc. 7). Defendants responded to the complaint on January 17, 2019, with a Counterclaim, Answer and Affirmative Defenses. (Doc. 10). Defendants are now moving to have the entry of default set aside. (Doc. 12).

## II.     The Relevant Standard

### A.     Default Judgment

The Fifth Circuit Court of Appeal disfavors default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). A default judgment is considered to be a drastic remedy that should only be available "when the adversary process has been halted because of an essentially unresponsive party." *Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Therefore, that a defendant is in technical default is not enough to get a default judgment. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). The entry of default

judgment is generally a matter of discretion for the district judge. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

The Fifth Circuit has developed a two-part test to determine whether a default judgment should be entered. *Lindsey v. Prive Corp.*, 161 F.3d at 893. Another section of this Court has recently discussed this two-part test as follows:

> In determining whether a default judgment should be entered, the Fifth Circuit has developed a two-part test. *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 813 (M.D. La. 2014). First, the Court must determine whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Factors relevant to this determination include: (1) whether there are material issues of fact at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.* Second, the Court must assess the merits of Plaintiff's claims and find a viable claim for relief. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

*J&J Sports Prods., Inc. v. Boil & Roux Kitchen, LLC,* 2018 WL 1089267, at *1 (M.D. La. Feb. 27, 2018).

Apart from the general two-part test, there are additional implications as to the appropriateness of a default judgment when there are multiple defendants, especially when a plaintiff alleges joint and several liability. *See Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. CCR Fire Protection, LLC*, 2018 WL 3076743, at *7 (M.D. La. June 21, 2018). This Court has previously stated, "[t]he issue may not be amenable to a categorical decision: the likelihood of inconsistent judgments where joint and several liability is alleged will vary with specific facts and issues presented in a particular case." *Id.*, at *8. Further, "there is an emphatically clear answer as to the appropriate course of action when it is at all uncertain whether a default judgment should be entered." *Id*. Therefore, the appropriateness of a default judgment

4

should be decided on a case-by-case basis, and if there is not a clear answer, the Court should err on the side of caution and refuse to issue a default judgment. *Id.*

### B. Set Aside Entry of Default

"The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "We are mindful that 'good cause' is not susceptible of precise definition and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely." *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992). "In determining whether to set aside a default decree, the district court should consider whether the default was willful, whether setting it aside would prejudice the adversary and whether a meritorious defense is presented." *Id.* These factors are not exclusive, and another factor includes if defendant acted expeditiously to correct the default. *Id.* "When … a defendant's neglect is at least a partial cause of its failure to respond, the defendant has the burden to convince the court that its neglect was excusable, rather than willful, by a preponderance of the evidence." *In re Chinese-Manufactured Drywall Products,* 742 F.3d 576, 594 (5th Cir. 2014).

## III. Discussion

### A. Parties' Arguments

#### 1. Plaintiffs' Motion for Entry of Default Judgment (Doc. 7)

Relying upon the two-part test and factors set forth in *Lindsey v. Prive Corp.*, Plaintiffs argue that entry of default judgment is appropriate under the circumstances. (Doc. 7-9, pp. 2-3 (citing *Lewis v. Nelson*, No. 18-00256, 2018 WL 6739065, at *1 (M.D. La. Dec. 24, 2018); *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). Plaintiffs argue that there are no material issues of fact because "the Guarantors have not filed an answer under Rule 12". (Doc. 7-9, p. 3). Plaintiffs argue that they have been "repeatedly prejudiced" by "the Guarantors' delay and

avoidance tactics over the past three years", further explaining that the promissory notes have been in default for over three years. (Doc. 7-9, p. 3). Then, to further delay matters, Defendants "filed Chapter 11 bankruptcy". The bankruptcy was converted into a Chapter 7 bankruptcy, and the bankruptcy trustee later filed an adversary proceeding against Defendants requesting that the bankruptcy discharge be denied for fraudulently failing to disclose assets. (Doc. 7-9, p. 4). Judge Dodd agreed with the bankruptcy trustee and denied the discharge based on fraudulent concealment of financial information. (*Id.*). The entire bankruptcy process caused Plaintiffs to wait two years to institute their suit. (*Id.*).

Addressing the third *Lindsey* factor, Plaintiffs argue that the grounds for default are clearly established based on the timeline set forth above: service of suit on November 7, 2018; no responsive pleadings filed; motion for entry of default filed on December 18, 2018; default entered December 19, 2018; and motion for default judgment filed on January 3, 2019. (Doc. 7-9, p. 5).

In addressing the fourth factor, Plaintiffs argue that there is no record evidence that Defendants' failure to timely file responsive pleadings was due to a good faith mistake or excusable neglect. Considering Defendants removed the suit to federal court, Plaintiffs argue that this evidences Defendants' clear understanding of filing deadlines. (Doc. 7-9, p. 5).

Plaintiffs argue that Defendants' failure to file responsive pleadings or a motion "mitigates" the harshness of a default judgment; therefore, the fifth and sixth factors are met. (Doc. 7-9, p. 5).

In addition to the *Lindsey* factors, Plaintiffs argue that they have a valid claim for relief. Due to the default on the loans, the guarantors, *i.e.*, Defendants, are responsible for performing in accordance with the terms of the guaranties of the notes. Plaintiffs offer evidentiary support for their claim. (Doc. 7-9, p. 6).

Defendants filed responsive pleadings on January 17, 2019. (Doc. 10). Defendants then moved to set aside the default. (Doc. 12).

### 2. Defendants' Motion to Set Aside Default (Doc. 12)

Defendants introduce their motion by stating that they live in Canada and "demonstrated" their "intention to appear" by removing the matter as *pro se* litigants to federal court. As non-lawyers and residents of Canada, Defendants believed their removal to represent their intention to appear and defend the matter, and they encountered significant time delays. (Doc. 12-1, pp. 1-2). Defendants urge that the default was not willful, and as soon as legal representation was secured, Defendants responded to the complaint. (Doc. 12-1, p. 2). Defendants contend that their responsive pleadings evidence their "meritorious defenses", which was supported by a recent ruling by a California state court. Finally, Defendants simply state that Plaintiffs "cannot demonstrate any legitimate prejudice arising from the modest delay at issue". (Doc. 12-1, p. 2).

Defendants argue that they made an appearance when they removed this matter to federal court. Defendants claim that the Fifth Circuit Court of Appeal interprets what qualifies as an appearance under Rule 55 "broadly", citing *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A default should only be entered when the defendant fails to "appear", which Defendants argue they did not fail to do here. (Doc. 12-1, pp. 3-4). Defendants further argue that an "appearance" is one which implies recognition of the court's jurisdiction and a "presentation or submission to the court" which indicates that a defense is being pursued. (Doc. 12-1, p. 4 (citing *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002); *Serv. Janitorial, LLC v. Talbot*, 08-CV-685, 2009 WL 10677607, at *2 (E.D. Tex. Jan. 22, 2009)). Defendants argue that thier removal should qualify as an appearance.

Applying factors set forth in *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000), Defendants argue that the default should be set aside. First, Defendants argue that the default was not willful. Defendants were not represented by counsel until they filed their responsive pleadings on January 17, 2019. Also, the residence of Defendants in Canada caused them to receive documents on a delay. (Doc. 12-1, p. 5).

Second, Defendants argue that there is no evidence of prejudice to Plaintiffs. "Mere delay does not alone constitute prejudice." Plaintiffs must show that the delay will result in loss of evidence, increased difficulty in discovery, or greater opportunities for fraud or collusion, which Plaintiffs did not show. (Doc. 12-1, p. 5 (citing *Antoine v. Boutte*, C.A. No. 15-561, 2017 WL 1969468, at *5 (M.D. La. 2017)).

Third, Defendants argue their "meritorious defenses" to Plaintiffs' claims. Defendants refer the Court to its answer and counterclaim which purportedly details Defendants' defenses and contentions, describing, in detail, an alleged deal in "bad faith" and "under the table" between Plaintiffs and ill-reputed contractors; stealing of millions of Plaintiffs' dollars; fraudulent liens; schemes between Plaintiffs and a "felon" to Defendants' detriment; foreclosures; and alleged "double recovery" by Plaintiffs from Defendants in the present litigation. (Doc. 12-1, pp. 6-9 (citing Doc. 10, ¶¶ 1-5, 15-19, 23, 25-26, 28-30-34)). Defendants also highlight that the Superior Court of the State of California, County of Santa Clara, held in related litigation that Defendants' allegations gave rise to "valid defenses". (Doc. 12-1, p. 9 (citing *Harbour v. Sirico, et al.*, No. 15-CV-188934 (Sup. Ct. Calif. 2016)).

    **3.**     **Plaintiffs' Opposition (Doc. 16)**

Plaintiffs oppose Defendants' motion to set aside the default, arguing that Defendants' delay in filing responsive pleadings was willful and that Defendants have not shown "valid defenses". (Doc. 16, p. 1).

First, Plaintiffs aver that Defendants misunderstand the difference between the entry of a default and a default judgment and explain the applicable law governing same. (Doc. 16, pp. 3-4). Plaintiffs argue that because Defendants did not timely file an answer, that Plaintiffs' motion for entry of default was proper. (Doc. 16, p. 4 (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)). Plaintiffs then sought a default judgment after the passing of the requisite time period. Plaintiffs argue that Defendants' argument of an "appearance" is irrelevant to Plaintiffs' motion for default judgment. (Doc. 16, pp. 4-5).

Second, Plaintiffs argue that the entry of default should not be set aside because Defendants' delay was willful. (Doc. 16, p. 5 (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)). Plaintiffs contend that Defendants "history" of avoiding paying their debts is "very relevant" to the question of willfulness. Plaintiffs' reference is to Defendants' bankruptcy proceedings that were later allegedly "barred for fraud". (Doc. 16, p. 5). Plaintiffs also argue that "Defendants' vast litigation experience" and their "sophisticated" removal suggests that Defendants were aware of deadlines but chose not to abide by them. (Doc. 16, pp. 5-6). Plaintiffs contend that Defendants delayed securing legal representation. Further, Plaintiffs state that Defendants sought an extension of time to respond, which Plaintiffs denied based on their history with Defendants. (Doc. 16, p. 6).

Third, Plaintiffs argue their prejudice if the default is set aside. Every day that Defendants delay proceedings, it is another day that Defendants can "hide their assets". (Doc. 16, p. 6).

Fourth, Plaintiffs find Defendants' defenses lacking in merit. Plaintiffs claim that Defendants' contentions in their answer and counterclaim are false, pre-date the bankruptcy proceeding, now "belong to the bankruptcy trustee", and Defendants have failed to dismiss their counterclaim despite a request to do so. (Doc. 16, p. 7). Plaintiffs argue that Defendants' "defenses" are not "legal defenses". (Doc. 16, p. 8 (citing to *American Bank v. Saxena*, 553 So.2d 836, 844 (La. 1989)). Plaintiffs argue that allegations of wrongdoing are based in tort and do not relate to the contracts at issue. (*Id.*). Plaintiffs argue specific "defenses" of Defendants "lack merit". (Doc. 16, pp. 8-10).

### 4. Defendants' Reply (Doc. 25)

Defendants respond that they have met the applicable standard by showing that their delay was not willful, Plaintiffs are not prejudiced by the brief delay, and Defendants have meritorious defenses. Therefore, Defendant argues, this Court should resolve the present dispute on the merits, rather than by default. (Doc. 25, p. 2).

Defendants note that a "willful default is an 'intentional failure' to respond to litigation". (Doc. 25, p. 2 (citing *Antoine*, 2017 WL 1969468, at *3)). Plaintiffs have not shown that Defendants "intentionally failed" to respond to the complaint; rather, Plaintiffs argued that Defendants could have done better and found representation sooner. (Doc. 25, p. 2). Any doubt should be resolved in favor of the defendant to secure a trial on the merits. (Doc. 25, p. 3 (citing *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008)).

Defendants argue that Plaintiffs do not show that setting aside the default will result in a loss of evidence, increased difficulty in discovery, or that Defendants will engage in fraud or collusion. (Doc. 25, p. 3).

Finally, Defendants re-urge their meritorious defenses that "contain a hint of suggestion" which, if proven at trial, would constitute a defense. (Doc. 25, p. 4). Defendants argue that Plaintiffs "fail to show that there is no possibility that any of Defendants' affirmative defenses would be successful at trial". (*Id*.).

Defendants conclude their argument by stating that the Court favors trial on the merits over default judgments. (Doc. 25, p. 5 (citing *Antoine*, 2017 WL 1969468, at *2)).

**B.     Analysis**

With the above legal standards and briefing in mind, the Court first turns to Defendants' motion to set aside the entry of default.

Here, the above factors (willful, prejudice, and meritorious defense) weigh in favor of setting aside the entry of default. First, Defendants' default was not willful. The Fifth Circuit has defined willfulness as "an intentional failure to respond to litigation." *In re OCA*, 551 F.3d 359, 370, n. 32 (5th Cir. 2008). Courts in the Fifth Circuit have found both willfulness and an absence of willfulness in cases where a served party failed to timely respond. *Pelican Renewables 2, LLC v. Directsun Solar Energy & Technology, LLC*, 325 F.R.D. 570, 575 (E.D. La. Mar. 3, 2016) (where the court found an absence of willfulness when the defendants failed to file an answer because of evidence that the defendants responded to similar litigation in another venue, evidencing that the failure to answer in the instant matter was not an effort to "play games"); *Hancock Bank v. Oller*, No. CV 14-1300, 2016 WL 301695, at *5 (E.D. La. Jan. 25, 2016) (finding a failure to answer to be negligent, rather than willful, where the party "repeatedly appeared before the Court" and appeared "engaged in litigating" the matter despite failing to answer). Defendants engaged in the process by filing a notice of removal and later filing an answer and counterclaim, followed by the instant motion. Defendants also requested an informal extension of time to

formally respond to the complaint; however, Plaintiffs denied this request. *See, Lambert v. Board of Commissioners of Orleans Levee Dist.*, 2006 WL 1581261, at *2 (E.D. La. June 7, 2006) (where the court considered the defendants' prior requests for informal extensions of time in evaluating whether the default was willful). While Defendants could have filed a motion for an extension of time to respond to the complaint until legal representation was secured, the Court cannot say that Defendants intentionally failed to respond to the lawsuit. *See, B.R.L., Inc. v. City of New Orleans,* 2003 WL 21459692, at *1 (E.D. La. Jun. 18, 2003). Even if Defendants were neglectful in failing to respond, they have demonstrated that the neglect was excusable.

Second, in their opposition to the instant motion, Plaintiffs demonstrated no significant prejudice by setting aside the entry of default. The Court can appreciate Plaintiffs' frustration and desire to move this matter to the next phase of collection; however, it was a brief time period with regard to the default proceedings, and both parties' arguments lend themselves to favoring a trial on the merits. *See, Broadwing Communications, Inc. v. Harris*, 2000 WL 1059863, at *2 (E.D. La. Aug. 1, 2000) (The "mere fact that setting aside the default would delay collection of the amount in dispute if Broadwing were to prevail at trial or would require it to litigate the action is insufficient prejudice to require the default to stand." citing C&G Boats, Inc. v. Texas Ohio Servs., Inc., 164 F.R.D. 57, 59 (E.D. La. 1995). *See, e.g., Bailey v. E.B.R. Parish Prison*, 2014 WL 4627265, at *4 (M.D. La. Sept. 12, 2014)(finding that a delay of over a year for lack of service not prejudicial) (citing *Reynolds v. Dallas County,* 2009 WL 2591192, at *4 (N.D. Tex. Aug. 21, 2009) (where failure to serve for more than a year did not threaten judicial process); *see also Core Funding Group, LP v. McIntire*, 2011 WL 1795242, at *5 (E.D. La. May 11, 2011) (where "only seven months" was not a prejudicial delay)). The Court does not believe that Plaintiffs would be

prejudiced by having to prove the merits of their claims, particularly considering the fact that this case has no discovery cutoff or trial date set.

Third, Defendants have alleged what may be several meritorious defenses to the claims pending against it. At this juncture of proceedings, the Court need not decide which party prevails. The issue, rather, is whether Plaintiffs have shown that they may have a valid case, and they have; and whether Defendants have shown defenses to Plaintiffs' claims that may have merit, and they have. *See Broadwing Communications*, 2000 WL 1059863, at *2 ("potentially meritorious defenses that deserve further consideration"); *Veterans Brothers No. 126, L.L.C. v. 7-Eleven, Inc.*, 2016 WL 7441148, at *4 (E.D. La. Dec. 27, 2016) ("To present a meritorious defense to set aside an entry of default, it is sufficient to show 'some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" citing *In re OCA*, 551 F.3d at 373); *Juneau v. Morrow*, 2016 WL 4574580, at *3 (W.D. La. July 6, 2016) (where the defendants set forth meritorious defenses in their answer and revised answer as explained in their motion to set aside the entry of default).

And fourth, Defendants have acted expeditiously in correcting the problem. The entry of default occurred on December 19, 2018, (Doc. 6), and Defendants answered this suit one month later on January 17, 2019, (Doc. 10), quickly followed by its motion to set aside the entry of default on January 21, 2019. (Doc. 12).

In sum, Defendants have demonstrated that setting aside the entry of default is appropriate.

In light of the above, Plaintiffs' motion for default judgment is denied as moot. First, at the time Plaintiffs filed their motion, Defendants had not yet secured legal counsel or filed formal responsive pleadings. However, Defendants filed responsive pleadings since that time. Therefore,

13

the record reflects issues suitable for trial.  *Lewis*, 2018 WL 6739065, at *1; *Lindsey,* 161 F.3d at 893.

Second, the overarching standard is whether a default judgment is appropriate.  *Lindsey,* 161 F.3d at 893.  And in answering that question it is appropriate to err on the side of Defendants and proceed to a trial on the merits.  *Road Sprinkler Fitters*, 2018 WL 3076743, at *8.  Defendants' delay was brief, and any prejudice to Plaintiffs was not substantial.  *Lindsey,* 161 F.3d at 893.

The Court agrees with Plaintiffs that they followed the proper deadlines and rules for the default process.  However, Defendants have now answered Plaintiffs' complaint and made a showing sufficient to set aside the entry of default.  In the interest of justice, it is appropriate to move this matter to a trial.  It would be especially harsh to grant a default judgment when Defendants have answered the complaint and filed a motion to set aside the default.

For the reasons set forth above, Defendants' delay may be categorized as excusable neglect due to their appreciation for the need of legal counsel and the brief delay actually incurred as they did so.  Further, Defendants requested additional time from Plaintiffs, which evidences "good faith" as opposed to a lack of respect for the proceedings.

For these reasons, Plaintiffs' motion is denied as moot.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Motion for Entry of Default Judgment of Plaintiffs, Michael Harbour and Tasman Holdings, LLC, **DENIED** as moot.

**IT IS ORDERED** that the Motion to Set Aside Entry of Default of Defendants, Louis Anthony Sirio and Lisa Grace Loud, is **GRANTED**, and

**IT IS FURTHER ORDERED** that the Clerk's office is hereby directed to vacate and set aside the entry of default entered against Defendants at Doc. 6.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana, on ___July 8, 2019___.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**