# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MICHAEL HARBOUR AND
TASMAN HOLDINGS, LLC

VERSUS

LOUIS ANTHONY SIRICO AND
LISA GRACE LOUD

CIVIL ACTION

NO. 18-1055-JWD-EWD

## RULING AND ORDER

This matter is before the Court on *Tasman Holdings, LLC's Motion for Summary Judgment* ("*Motion*") filed by Tasman Holdings, LLC ("Tasman"). (Doc. 37). In response, Louis Anthony Sirico and Lisa Grace Loud ("Defendants"), filed a *Memorandum in Opposition to Tasman Holdings, LLC's Motion for Summary Judgment* ("*Response*"). (Doc. 42.) In reply, Tasman filed *Tasman Holding, LLC's Reply Memorandum* ("*Reply*"). (Doc. 43.) Oral argument is not necessary. Having carefully considered the facts, the arguments of the parties, the law and for the reasons expressed below, the Court will grant the *Motion*.

## FACTS

*a. Background*

On February 9, 2015, Defendants contracted with Matt Morris of Complete Construction Contractors, LLC ("Complete Construction") to renovate a hotel ("Hotel") that they purchased through their entity LL Hotels, LLC ("LL Hotels"). (Doc. 42 at 2 (citing Doc. 10 at ¶ 17).) To pay for the renovations, on February 15, 2015, LL Hotels signed a promissory note and mortgage on the Hotel ("Harbour Note") in favor of Michael Harbour ("Harbour"). (Doc. 42 at 2 (citing Doc. 10 at ¶ 15).)

LL Hotels' contract with Complete Construction stated that no funds would be distributed to Complete Construction without Defendants' sign off, based on a review performed by an independent inspector ("Inspector"). (Doc. 42 at 3 (citing Doc. 10 at ¶ 15).) On April 15, 2015, Defendants and Harbour amended the Harbour Note to increase the loan and allow Harbour to pay Complete Construction directly. (Doc. 10 at ¶ 19.) In connection with the amendment, Defendants executed personal guaranties in favor of Harbour. (Doc. 10 at ¶ 20.)

On April 16, 2015, Complete Construction informed Harbour that it would default if it was not immediately paid. (Doc. 10 at ¶ 21.) Harbour bypassed the requirements in the contract between LL Hotels' and Complete Construction and transferred more than a million dollars of loan proceeds directly to Complete Construction prior to the Inspector's review of the work on the Hotel. (Doc. 42 at 3 (citing Doc. 10 at ¶ 21.).) Once the Inspector finished reviewing Complete Construction's work, he found it to be subpar. (Doc. 42 at 3 (citing Doc. 10 at ¶ 23).) Matt Morris, however, absconded with the funds from Harbour and was eventually convicted of defrauding homeowners by filing inflated liens. (*Id.* at 2-3 (citing Doc. 10 at ¶ 35).) Complete Construction also filed fraudulent liens on the Hotel, impeding Defendants' ability to seek substitute financing. (*Id.* at 3 (citing Doc. 10 at ¶ 25).) It was Harbour who informed Defendants that Complete Construction would be filing the lien on the Hotel. (*Id.* at 3 (citing Doc. 10 at ¶ 26).)

b. *The Tasman Note and Guaranties*

On April 14, 2014, before renovations started on the Hotel, LL Hotels obtained financing from Maple Bridge Funding, LLC through a Promissory Note dated April 14, 2014 in the original principal amount of $1,050,000.00 made by LL Hotels, in favor of Maple Bridge Funding, LLC, its successors and assignees ("Tasman Note"). (Doc. 37-2) On April 14, 2014, Defendants, each executed a "Continuing Unconditional Guaranty" agreement, which personally

guaranteed the indebtedness of LL Hotels ("Guaranties"). (Doc. 37-2 at 8-24.) The Guaranties provide that Defendants agreed to:

> absolutely and unconditionally guarantee[] to Lender, as primary obligor and not merely as surety, the performance of and full and prompt payment of the Liabilities (as hereafter defined) when due, whether at stated maturity, by acceleration or otherwise.

(Doc. 37-2.) The Guaranties are unlimited and were made for the benefit of the "Lender and its successors and assigns." (Doc. 37-2 at 8 and 17.) The Tasman Note and Guaranties were transferred by allonge, without recourse from Maple Bridge Funding, LLC to Ability Insurance Company on April 14, 2014. (Doc. 37-2 at 45.) The Tasman Note has been in default for non-payment since October 16, 2015. (Doc. 37-1 at ¶ 12.)

As of July 31, 2019, LL Hotels is indebted to Tasman under the Tasman Note in the principal amount of $1,050,000.00, plus interest accruing from October 2015 through July 31, 2019 at the default rate of 18% in the amount of $726,600.00, plus 5% (five percent) late fees in the amount of $88,830.00, totaling $1,865,430.00. (Doc. 37-1 ¶ 13; 37-2; 37-3.) Default interest, fees, and attorneys' fees continue to accrue. (*Id.*)

c. *Foreclosure of the Hotel*

On February 5, 2016, Defendants allege they secured financing from South Louisiana Bank with the condition that the existing debt be retired, and South Louisiana Bank obtain the first position lien on the Hotel. (Doc. 42 at 4 (citing Doc. 10 at ¶ 29).) Defendants informed Harbour that they sought to use the alternative financing to retire the Harbour Note and the Tasman Note, which at that point in time was held by Ability Insurance Company. (*Id.*) Harbour continued to negotiate with Defendants to retire the Harbour Note and during negotiations received an appraisal of the Hotel. (*Id.* at 4 (citing Doc. 10 at ¶ 30).)

On February 26, 2016, Ability Insurance Company transferred the Tasman Note and the Guaranties to Tasman by an *Act of Transfer and Assignment of Promissory Note and Related Security without Recourse*. (Doc. 37-2 at 46-57.) Tasman is the holder and owner of the Tasman Note and Guaranties. (Doc. 37-2.) Tasman is managed by Harbour. (Doc. 37-1 at ¶ 1.) Defendants allege that Plaintiffs refused to relinquish the debt on the Tasman Note and the Harbour Note to South Louisiana Bank and Defendants were unable to procure alternative financing. (Doc. 42 at 4.)

On May 3, 2016, Harbour filed foreclosure proceedings against the Hotel, and the order of executive seizure was filed on May 3, 2016 and signed on May 9, 2016. (Doc. 42 at 4; Doc. 16-7.) As a result of these proceedings, Harbour had Mr. Sirico removed from the Hotel, expelled the guests, and did not take possession of the property. (Doc. 42 at 3 (citing Doc. 10 at ¶ 32).) Tasman voluntarily cancelled the security interest in the Hotel on August 9, 2016. (Doc. 37-2 at 58.) Harbour continued with the foreclosure and purchased the Hotel at the foreclosure auction on November 2, 2016. (Doc. 42 at 4 (citing Doc. 10 at ¶ 34).)

d.  *Affirmative Defenses*

Defendants allege that any recovery by Tasman and/or Harbour is subject to the following affirmative defenses:

1. Plaintiffs' recovery is barred by Harbour's prior material breaches, including, but not limited to, the payment of more than $1 million in loan proceeds directly to Complete Construction without following the procedures set forth in the parties' contracts.
2. Plaintiffs' recovery is barred by the doctrine of unclean hands in connection with the remedy of foreclosure, with acts including, but not limited to, Harbour's false claim that foreclosure was only a precaution, Harbour's removal of Sirico and closure of the hotel, and Harbour's use of Tasman to sabotage Sirico and Loud's alternate funding.
3. Plaintiffs' recovery is barred and/or subject to set off by virtue of the fact that Plaintiffs engaged in waste of the collateral by Harbour's eviction of Sirico and closure of the hotel, and Harbour's subsequent failure to protect the hotel's value.

4

4. Plaintiffs' recovery is barred and/or subject to set off by reason of Harbour's breach of fiduciary duty in connection with the foreclosure, including, but not limited to, Harbour's eviction of Sirico and closure of the hotel, and Harbour's subsequent failure to protect the hotel's value.
5. Plaintiffs were unjustly enriched at the expense of Defendants and LL Hotels because of Harbour's eviction of Sirico and closure of the hotel, and Harbour's subsequent failure to protect the hotel's value, leading to a reduced credit to Defendants from foreclosure.
6. Plaintiffs' recovery is barred by reason of Harbour's violation of Cal. Civ. Code § 2923.6(c) because Harbour simultaneously offered Defendants a loan modification and pursued foreclosure.
7. Defendants show that Plaintiffs' damages, if any, were caused solely or proximately by the fault and/or negligence of the Plaintiffs, including, but not limited to, Harbour's eviction of Sirico and closure of the hotel, and Harbour's subsequent failure to protect the hotel's value, leading to a reduced credit to Defendants from foreclosure, which fault serves as a complete and total bar to any recovery by Plaintiffs herein.
8. Defendants plead equitable defenses, including, but not limited to, laches, equitable estoppel, waiver, and unclean hands, which will be established after a reasonable opportunity for further investigation and discovery.

(Doc. 42 at 4-6.)

## APPLICABLE STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## DISCUSSION

*a. Parties' arguments*

1. <u>Tasman's arguments</u>

Tasman argues that under Louisiana law, a "contract of guaranty is equivalent to a contract of suretyship, and the two terms may be used interchangeably." (Doc. 37-5 at 5 (quoting *N.E.N.H., L.L.C. v. Broussard-Baehr Holdings, L.L.C.*, 13-893, p. 6 (La. App. 5 Cir. 5/14/14), 142 So. 3d 91, 94, *writ denied,* 2014-1183 (La. 9/19/14), 149 So. 3d 247)).) Tasman maintains "suretyship is an accessory promise by which one binds himself for another already bound and agrees with the creditor to satisfy the obligation if the principal debtor does not do so. An agreement of suretyship must be express and in writing and must be explicit. (Doc. 37-5 at 6 (quoting *Lucky Coin Mach. Co. v. J.O.D. Inc.*, 14-562, p. 7-8 (La. App. 5 Cir. 12/23/14), 166 So. 3d 998, 1003) (internal citation omitted).) Further, Tasman asserts, a contract of guaranty or suretyship are interpreted following the same rules as contracts in general. (Doc. 37-5 at 6 (citing *Ferrell v. S. Cent. Bell Tel. Co.*, 403 So. 2d 698, 700 (La. 1981)).) Therefore, to determine the common intent of the parties, Tasman argues the Court must "give legal effect to all [surety] contracts according to the true intent of the parties, and this intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd

consequences." (Doc. 37-5 at 6 (quoting *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 578 (5th Cir. 2015)).)

Tasman asserts that to make out a prima facie case for the enforcement of a guaranty, it must show that (1) "the note and the guaranty agreement exist and are valid;" (2) Tasman "is the present holder or owner of the note;" (3) "the borrower defaulted on the note;" and (4) Defendants are "liable under the guaranty agreement." (Doc. 37-5 at 6 (citing *Resolution Tr. Corp. v. Marshall*, 939 F.2d 274, 276 (5th Cir. 1991)).) In support, Tasman cites *Gulf Coast Bank & Tr. Co. v. Elmore*, for the proposition that under Louisiana law, a lender's

> burden of proof on its demand to collect on a promissory note is not difficult. The lender must merely produce the note in question to make out a *prima facie* case. The burden then shifts to the defendant to prove any affirmative defenses. This same rule applies to the guarantor or surety.

(Doc. 37-5 at 6 (quoting *Gulf Coast Bank & Tr. Co. v. Elmore*, 2010-1237, p. 6 (La. App. 4 Cir. 1/26/11), 57 So. 3d 553, 556 (internal citations omitted)).)

Applying the law to the facts of the case, Tasman argues that it has established its prima facie case for the enforcement of the Guaranties. (Doc. 35-7 at 7.) Tasman attaches to the *Motion* the Tasman Note, which contains a written and unconditional promise to pay to the order of the lender a sum certain in money that is signed by LL Hotels. (Doc. 37-5 at 7 (citing Doc. 37-2).) Tasman has shown that it is the present holder of the Tasman Note and the amounts owed, and that the Tasman Note is in default. (*Id.*) Tasman likewise attaches the Guaranties, which show that Defendants agreed in writing to be jointly, severally, and unconditionally liable for the amount owed under the Tasman Note. (*Id.*)

Tasman asserts that as the prima facie case has been established, Defendants have the burden to prove their affirmative defenses, which Tasman maintains they cannot do. (Doc. 37-5 at 7.) Tasman argues that there are no genuine issues of material facts with respect to

7

Defendants' affirmative defenses that will preclude enforcement of the Tasman Note and Guaranties. (Doc. 37-5 at 7.)

Tasman argues that Defendants' affirmative defenses relating to set offs are not meritorious because under Louisiana law, an assertion of set off for an unliquidated claim is not a valid defense to a liquidated suit on a note and guaranty. (Doc. 37-5 at 8.) Tasman compares this case to *American Bank v. Saxena*, in which the Louisiana Supreme Court found:

> A disputed debt is not liquid and cannot be admitted as susceptible of compensation unless the one who asserts compensation has in hand the proof of the existence of the disputed debt and is thus in a position to prove it promptly.

(Doc. 37-5 at 8 (citing *Am. Bank v. Saxena*, 553 So. 2d 836, 844 (La. 1989)).) Tasman maintains that in *Saxena*, the Louisiana Supreme Court rejected the use of claims for bad faith, negligence and breach of duty—all claims governed by tort—as viable claims for set off, because those claims did not relate to the contracts at issue between the bank and the borrower. (Doc. 37-5 at 9 (citing *Saxena*, 553 So. 2d at 844).) Therefore, Tasman argues that under Louisiana law "an unliquidated claim for damages cannot be pleaded in compensation against a liquidated claim based on a promissory note." (Doc. 37-5 at 8-9 (quoting *Gulf Fed. Sav. & Loan Ass'n v. Nugent*, 528 So. 2d 782, 784 (La. Ct. App.), *writ denied,* 533 So. 2d 19 (La. 1988) (emphasis added)).) Applying *Saxena* to this case, Tasman argues Defendants admitted they executed the Guaranties, and the affirmative defenses are unliquidated damages claims unrelated to the agreements between the parties and, therefore, not meritorious. (Doc. 37-5 at 10.)

Tasman also asserts that Defendants' affirmative defenses raise issues regarding actions taken by Harbour in connection with the Harbour Note and mortgage, not the Tasman Note and Guaranties. (*Id.* at 8; 10.) Tasman maintains that because Tasman is a separate juridical entity from Harbour it follows that (1) the Tasman Note and Guaranties are separate from the Harbour Note and mortgage, and (2) any allegations regarding the actions taken by Harbour to enforce the

Harbour Note and mortgage have no factual or legal relationship to the enforcement of the Tasman Note and Guaranties. (*Id.*) Tasman likewise argues that the second affirmative defense, that Tasman is "barred by the doctrine of unclean hands in connection with . . . [the] foreclosure" of the Hotel, fails because Harbour not Tasman foreclosed on the Hotel. (Doc. 37-5 at 11.)

Tasman asserts that the sixth affirmative defense, that Tasman's recovery is barred due to violations of Cal. Civ. Code § 2923.6(c), fails because the Guaranties are governed by Louisiana law and, if the Court chooses to apply California law, § 2923.6(c) is not relevant to Defendants' liability under the Guaranties. (Doc. 37-5 at 11.) Tasman argues that § 2923.6(c) provides,

> [i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."

(Doc. 37-5 at 11 (quoting Cal. Civ. Code § 2923.6(c)).) Tasman maintains that Tasman did not offer loan modifications and did not take any steps to foreclose as it released its security interest in the Hotel on August 9, 2016. (Doc. 37-5 at 12.) Therefore, Tasman argues Cal. Civ. Code § 2923.6(c) does not apply.

Last, Tasman argues the seventh affirmative defense, that Tasman's recovery is barred because its damages are caused by its own negligence, fails because the claims brought by Tasman are based in contract, not tort. (Doc. 37-5 at 12.) Therefore, because there are no genuine issues of material facts as to liability on the Guaranties and the affirmative defenses are without merit, Tasman argues that summary judgment is appropriate. (Doc. 37-5 at 12.)

2. Defendants' response

First, Defendants argue the Court's holding that "Defendants have alleged what may be several meritorious defenses to the claims pending against it" in its Order setting aside the

default entered against them; is sufficient to show that meritorious defenses exist. (Doc. 42 at 7.) Defendants argue that the standard to set aside default and the standard for a motion for summary judgment are substantially similar. (Doc. 42 at 7 (citing *Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.*, No. 16-272, 2016 U.S. Dist. LEXIS 178536 (E.D. La. Dec. 27, 2016)).) Defendants also point the Court to a ruling by the Superior Court of the County of Santa Clara in California that found there were factual disputes as to whether Harbour acted with unclean hands and therefore denied an application for attachment against Harbour. (Doc. 42 at 8.)

Second, Defendants argue that Harbour used Tasman to perpetuate a scheme against Defendants. (Doc. 42 at 8.) Defendants highlights that Tasman is managed by Harbour and as Tasman's agent, Harbour controlled it. (Doc. 42 at 8.) As such, Defendants argue "Tasman cannot insulate itself from Harbour's misconduct simply because he used it as, in effect, his alter ego to purchase the Maple Bridge debt." (Doc. 42 at 8 (citing *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 419-24 (5th Cir. 1980)).)

Third, Defendants urge the Court to reject *American Bank v. Saxena*, as distinguishable. (Doc. 42 at 9.) Defendants argue that *Saxena* does not apply because in *Saxena*, the defendant's claims for set-off were against a third-party and the defendant failed to support any factual allegations. (*Id.*) In contrast, Defendants argue that they have provided a certified answer sworn under penalty of perjury to establish the factual basis for their affirmative defenses. (Doc. 42 at 9-10.) Further, Defendants maintain that the actions taken by Harbour directly affected the relationship between the parties because the relationship was not confined to the promissory notes in the suit. (Doc. 42 at 10.) Ultimately, Defendants urge the Court to distinguish *Saxena* because the affirmative defenses against Tasman are meritorious. (*Id.* at 10.)

3. Tasman's reply

Tasman argues that Defendants' conclusory legal statement that their allegations against Harbour are relevant to the Tasman Note and Guaranties is not supported by evidence. (Doc. 43 at 1.) Tasman argues that the it has carried its *prima facie* burden for enforcement of the Guaranties (*Id.* at 1-2.) As such, Tasman maintains that Defendants have the burden of proof to show there is a genuine issue of material fact as to the affirmative defenses, which they have failed to do. (*Id.* at 2.) Tasman points out that Defendants argue they are not liable due to their affirmative defenses but do not deny that they executed the Tasman Note and Guaranties. (*Id.*)

Tasman reiterates that any defense related to a set off are related to the actions taken by Harbour enforcing the Harbour Note and mortgage. In the alternative, Tasman argues the set off affirmative defenses fail because *Saxena* stands for the proposition that two debts must be "equally liquid to be susceptible of compensation" (Doc. 43 at 4 (citing *Saxena*, 553 So.2d at 844).) Therefore, Tasman maintains, "[a]n unliquidated claim for damages cannot be pleaded in compensation against a liquidated claim based on a promissory note." (Doc. 43 at 3 (quoting *Gulf Fed. Sav. & Loan Ass'n v. Nugent*, 528 So.2d 782, 784 (La. Ct. App.), *writ denied*, 533 So.2d 19 (La. 1988)).)

Tasman asserts that Harbour is a separate juridical person from Tasman and any facts or argument relating to Harbour is not relevant to the enforcement of the Tasman Note and Guaranties. (Doc. 43 at 4.) Tasman argues it is not sufficient for Defendants to simply state that Tasman is Harbour's alter ego without citing support in the record to establish a genuine dispute of material fact. (*Id.*)

Tasman further argues the doctrine of unclean hands is not applicable because it is unrelated to the Tasman Notes and Guaranties. (Doc. 43 at 4.) Tasman cites *United Financial Services of Baton Rouge, Inc. v. Guste*, for the proposition that doctrine of unclean hands applies

when "the fraud relates to the matter or transaction being asserted as a claim or defense." (Doc. 43 at 4 (citing 555 So, 2d 561, 564 (La. App. 1 Cir. 12/19/89)).) Therefore, because the claim is for the enforceability of the Guaranties and the unclean hands defense does not raise any issues regarding fraud in executing the Tasman Note and Guaranties, Tasman reasons the defense does not apply. (Doc. 43 at 4-5.)

Last, Tasman maintains that "law of the case" does not arise because Defendants were successful in setting aside the default. (Doc. 43 at 5.)

*b. Analysis*

1. <u>Whether Tasman has established the *prima facie* case to enforce the Guaranties</u>

Under Louisiana law, "[a] contract of guaranty is a contract of suretyship. The terms are interchangeable." *Commercial Nat. Bank in Shreveport v. Keene*, 561 So. 2d 813, 815 (La. Ct. App. 1990) (citing *First National Bank of Crowley v. Green Garden,* 387 So.2d 1070 (La.1980)).

> [A] "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ. Code art. 3035. Accordingly, "[a] suretyship contract is unilateral; it obligates the surety to the creditor and imposes a contractual obligation on the surety to the creditor." Michael H. Rubin, *Ruminations on Suretyship*, 57 La. L. Rev. 567, 568 (1997).

*U.S. Specialty Ins. Co. v. Strategic Planning Assocs., LLC*, No. CV 18-7741, 2019 WL 296864, at *4 (E.D. La. Jan. 23, 2019). "Under Louisiana law, a guaranty must be expressed clearly and must be construed within the limits intended by the parties to the agreement. However, contracts of guaranty [] are subject to the same rules of interpretation as contracts in general." *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 578 (5th Cir. 2015) (internal quotations and corrections omitted). Therefore, "[i]f a court may determine the unambiguous common intent of the parties from the language of the contract under the rules set out above, the analysis ends there." *Franks Inv. Co. v. Union Pac. R. Co.*, 772 F.3d 1037, 1042 (5th Cir. 2014).

12

"Typically, suits on promissory notes provide fit grist for the summary judgment mill." *Fed. Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir. 1988). Under Louisiana law, for a plaintiff-lender to satisfy its burden of proof at summary judgment,

> [t]he lender "must merely produce the note in question to make out a *prima facie* case. The burden then shifts to the defendant to prove any affirmative defenses." *Colonial Mortgage & Loan Corp. v. James,* 01–0526, p. 4 (La.App. 4 Cir. 3/6/02), 812 So.2d 817, 820. This same rule applies to the guarantor or surety. *See Merchants Trust & Savings Bank v. Olano,* 512 So.2d 1218, 1219–1220 (La.App. 5th Cir.1987).

*Gulf Coast Bank & Tr. Co. v. Elmore*, 2010-1237, p. 6 (La. App. 4 Cir. 1/26/11), 57 So. 3d 553, 555–56; *see SBN V FNBC*, 267 So. 3d at 661 ("In a suit on a promissory note, the plaintiff-lender's burden of proof is straightforward; the [plaintiff-lender's] production of the note sued upon makes his case. (internal quotations and citations omitted).[1] "Under Louisiana law, '[w]hen signatures [on a promissory note] are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.'" *Bankers Tr. Co. of California, NA v. Boydell*, 46 F. App'x 731 (5th Cir. 2002) (quoting *Am. Bank v. Saxena*, 553 So. 2d 836, 842 (La. 1989)) (corrections in original).

In this case, Tasman has produced the loan documents held by Tasman, including the Tasman Note (Doc. 37-2 at 1-8); and the Guaranties by Sirico (Doc. 37-2 at 8-15); and by Loud (Doc. 37-2 at 15-24). Tasman has also shown that Tasman is the present holder of the Note and the Guaranties through the production of the transfer by Allonge of the Tasman Note and the collateral documents to Ability Insurance Company (Doc. 37-2 at 45) and the Act of Transfer

---

[1] As referenced by Plaintiff, in a suit on a promissory note and guaranty, the Fifth Circuit, applying Texas law, held:
> To prevail in its summary judgment motion, the [plaintiff] had to establish (1) that the note and the guaranty agreement exist and are valid, (2) that the [plaintiff] is the present holder or owner of the note, (3) that [debtor] defaulted on the note, and (4) that [guarantor] is liable under the guaranty agreement.

*Resolution Tr. Corp. v. Marshall*, 939 F.2d 274, 276–77 (5th Cir. 1991).

and Assignment of Promissory Note and Related Security without Recourse (Doc. 37-2 at 46-57). Further, Tasman has provided evidence that the Tasman Note has been in default since October 16, 2015. (Doc. 37-1 at ¶ 12.) Last, Defendants do not contest that they each executed the Guaranties through their signatures. (Doc. 10 at p. 19, ¶ 12.) As such, "[w]hen signatures are admitted or established, production of the instrument entitles the holder to recover on it unless the defendant establishes a defense." *Am. Bank v. Saxena,* 553 So.2d 836, 842 (La.1989). Therefore, the Court finds that Tasman has established its *prima facie* case to enforce the Guaranties and will now turn to the question of whether Defendants have raised material issues of fact regarding their affirmative defenses against liability.

2. <u>Whether Defendants have established an affirmative defense against liability on the Guaranties</u>

Tasman argues that there are no genuine issues of material fact as to any of Defendants' affirmative defenses and that the affirmative defenses are not meritorious. (Doc. 37-5 at 7.) Defendants argue that the affirmative defenses are meritorious because Tasman is Harbour's alter-ego and the actions taken by Harbour relating to the Harbour Note and the foreclosure excuse the lack of performance on the Tasman Note. For the reasons expressed below, the Court agrees with Tasman.

First, the Court rejects the argument that its statement, in ruling on whether to set aside the default, that "Defendants have alleged what may be several meritorious defenses to the claims pending against it" acts as law of the case on the issue of whether Defendants have carried the burden of proof on the affirmative defenses. (Doc. 42 at 13.) The Court explained in its Ruling on whether to set aside the default,

> At this juncture of proceedings, the Court need not decide which party prevails. The issue, rather, is whether Plaintiffs have shown that they may have a valid case, and they have; and whether Defendants have shown defenses to Plaintiffs' claims that may have merit, and they have. *See Broadwing Communications*, 2000 WL

14

1059863, at *2 ("potentially meritorious defenses that deserve further consideration"); *Veterans Brothers No. 126, L.L.C. v. 7-Eleven, Inc.*, 2016 WL 7441148, at *4 (E.D. La. Dec. 27, 2016) ("To present a meritorious defense to set aside an entry of default, it is sufficient to show 'some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" citing *In re OCA*, 551 F.3d at 373); *Juneau v. Morrow*, 2016 WL 4574580, at *3 (W.D. La. July 6, 2016) (where the defendants set forth meritorious defenses in their answer and revised answer as explained in their motion to set aside the entry of default).

(Doc. 32 at 13.) The Court's prior Ruling on the Defendant's *Motion to Set Aside Default*, merely reasoned that Defendant's defenses "may have merit." This statement is not a ruling the Defendants have carried their burden on the affirmative defenses presented.

Defendants also assert, without producing evidence, that Taman is the alter-ego of Harbour. (Doc. 42 at 8.) Under Louisiana law, "[b]ecause of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances." *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1168 (La. 1991). The Louisiana Supreme Court, in *Riggins,* identified the following factors for courts to consider when determining whether to apply the alter-ego doctrine: "1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Riggins*, 590 So. 2d at 1168.

In this case, it apparent from his affidavit that Michael Harbour is the manager of Tasman. (Doc. 37-1.) However, beyond this fact, Defendants cite to no evidence and have produced no evidence relating to the *Riggins* factors, such that the Court could conclude that Defendants have raised a material issue as whether Tasman is the alter ego of Michael Harbour. Defendants' verified answer pleads "upon information and belief, Tasman Holdings is a Louisiana limited liability company established by Harbour to purchase the first mortgage on the

property . . ." (Doc. 10 at p. 4, ¶ 11.) Defendants' second affirmative defense likewise alleges that Harbour has unclean hands because of "Harbour's use of Tasman to sabotage Sirico and Loud's alternate funding." (Doc. 42 at 4.) Defendants' pleadings are insufficient to raise an issue of material fact at summary judgment because as the Fifth Circuit has explained, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Therefore, the Court declines to apply the alter-ego theory and will not impute Harbour's actions to Tasman.

With the exception of Defendants' second affirmative defense, each of the affirmative defenses relate to actions taken by Harbour, which are not relevant to whether Defendants are liable to Tasman on the Tasman Note and Guaranties. Defendants' second affirmative defense states, "Plaintiffs' recovery is barred by the doctrine of unclean hands in connection with the remedy of foreclosure, with acts including, but not limited to, Harbour's false claim that foreclosure was only a precaution, Harbour's removal of Sirico and closure of the hotel, and Harbour's use of Tasman to sabotage Sirico and Loud's alternate funding."  (Doc. 42 at 4.)

Louisiana law recognizes the unclean hands doctrine as an affirmative defense. *Allvend, Inc. v. Payphone Commissions Co.,* 00–0661, p. 6 (La.App. 4 Cir. 5/23/01), 804 So.2d 27, 30. Under the unclean hands doctrine, "[a] person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part." *Id.* Therefore, "the unclean hands doctrine denies recovery because courts do not want to aid plaintiffs whose causes of action are based on their own illegal conduct. This would condone and encourage wrongdoing, and allow persons of immoral [conscience] to profit from their lack of respect for the law." *Lakewood Prop. Owners' Ass'n v. Smith*, 2014-1376 (La. App. 4 Cir. 12/23/15), 183 So. 3d 780, 792–93, *writ denied,* 2016-0138 (La. 2/26/16), 187 So. 3d

469 (internal quotations omitted). However, "[t]he clean hands doctrine only applies when the fraud relates to the matter or transaction being asserted as a claim or defense." *United Fin. Servs. of Baton Rouge, Inc. v. Guste*, 555 So. 2d 561, 565 (La. Ct. App. 1989).

First, Tasman cancelled its security interest in the Hotel and took no steps to enforce its mortgage. (Doc. 37-2 at 58-60.) Therefore, to the extent that the second affirmative defense relates to actions taken by Harbour in foreclosing on the Hotel pursuant to the Harbour Note and Harbour Mortgage, the second affirmative defense is not relevant to Defendants' liability on the Tasman Guaranties. (Doc. 37-2 at 58-60.)

To the extent that Defendants argue that Tasman has unclean hands because it purchased the Tasman Note and Guaranties from Ability Insurance Company, the Court does not agree that Tasman's actions violated Louisiana law. The Fourth Circuit Court of Appeal for Louisiana has explained that:

> When a note is purchased at a discount, and then enforced according to its terms, the maker of the note is being called upon to do nothing other than what the maker contracted to do. For this reason, the general rule is that "the sale or purchase of negotiable or assignable commercial paper or another chose in action or evidence of indebtedness transferable in trade and business transactions, for valuable or legal consideration after its first negotiation, is not usurious even though the price or other consideration determined upon is less than the nominal or face value of the instrument purchased." 44B Am. Jur. 2d *Interest and Usury* § 95 (citing *First All. Bank v. Westover, Inc*., 222 Ga. App. 524, 524–25, 474 S.E.2d 717, 718 (1996)).

*SBN V FNBC LLC v. Vista Louisiana, LLC*, 2018-1026, p. 15 (La. App. 4 Cir. 3/27/19), 267 So. 3d 655, 665–66. Tasman's actions in purchasing the Tasman Note and Guaranties from Ability Insurance Corporation were not usurious nor do Defendants point the Court to how Tasman otherwise violated Louisiana law.

In addition, the Court notes that Tasman is correct that the affirmative defenses raised by Defendants are all unliquidated disputed claims. Under Louisiana law, "just because the defendant may have a separate, unrelated claim or reconventional demand against the holder

based on fraud, deceit or misrepresentation does not mean that he has a defense sufficient to thwart the motion for summary judgment." *Ouachita Nat. Bank in Monroe v. Gulf States Land & Dev., Inc.*, 579 So. 2d 1115, 1121 (La. Ct. App.), *writ denied,* 587 So. 2d 695 (La. 1991). The Louisiana Supreme Court in *Saxena* explained,

> [Defendant's] reconventional demands seek damages in tort, are heavily contested, and may or may not lead to recovery. Thus the debt defendant owes plaintiff has been admitted, while plaintiff denies liability for the debt claimed by defendant. Because the two obligations are clearly not equally liquidated and presently due, defendant has failed to meet the burden of proof and compensation is therefore not available.

*Am. Bank v. Saxena*, 553 So. 2d 836, 844–45 (La. 1989). Further, because Tasman is a separate legal entity from Harbour, and the only agreement between Tasman and Defendants is the Tasman Note and Guaranties, this case is not like that of *Ouachita Nat. Bank in Monroe*, wherein:

> [P]laintiff bank sued defendant developers on a series of promissory notes underlying loans made in furtherance of a real estate project. Defendants acknowledged signing the notes, but alleged that their nonperformance under the notes was excused because plaintiff breached an overall agreement between the parties. The court found that the alleged breach of the larger agreement may be a defense because the larger agreement was "decidedly not unrelated to the notes."

*Keybank Nat. Ass'n v. Perkins Rowe Assocs., LLC*, No. 09-497-JJB-SCR, 2010 WL 2133954, at *2 (M.D. La. May 26, 2010) (internal citations omitted). The Tasman Note and the Guaranties represent the only contracts between the parties, and therefore Defendants have failed to show a larger agreement related to the nonperformance on the Tasman Note and Guaranties.[2]

---

[2] Whatever courter-claims or affirmative defenses Defendants' may assert against Harbour and liability on the Harbour Note are not affected by this ruling.

## CONCLUSION

Accordingly,

IT IS ORDERED that *Tasman Holdings, LLC's Motion for Summary Judgment* (Doc. 37) filed by Tasman Holdings, LLC is GRANTED;

IT IS FURTHER ORDERED that Defendants Louis Anthony Sirico and Lisa Grace Loud, are liable *in solido* to Tasman Holdings, LLC, in the principal amount of $1,050,000.00, plus interest accruing through July 31, 2019 in the amount of $726,600.00, plus five (5%) percent late fees in the amount of $88,830.00, for a total of $1,865,430.00, plus interest accruing until paid.

Signed in Baton Rouge, Louisiana, on March 18, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**