# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MICHAEL HARBOUR AND
TASMAN HOLDINGS, LLC**

**CIVIL ACTION**

**VERSUS**

**NO. 18-1055-JWD-EWD**

**LOUIS ANTHONY SIRICO AND
LISA GRACE LOUD**

## RULING AND ORDER

This matter comes before the Court on the *Ex Parte Motion for Rule 54(b) Certification* (Doc. 55) filed by Plaintiff Tasman Holdings, LLC ("Plaintiff" or "Tasman"). Defendants Louis Anthony Sirico and Lisa Grace Loud (collectively "Defendants") oppose the motion. (Doc. 59.) Plaintiff has filed a reply. (Doc. 60.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and the submissions of the parties and is prepared to rule. For the following reasons, the motion is granted.

I.    **Introduction**

A.  **Factual Background[1]**

This action arises out of a loan secured for the renovation of a hotel purchased by LL Hotels, LLC ("LL Hotels"). LL Hotels is a limited liability company created by Defendants to purchase the hotel. In connection with these renovations, Defendants obtained two promissory notes: the Tasman Note, which is the subject of the instant motion, and the Harbour Note.

**1. Tasman Note**

---

[1] For a full recitation of the facts in this case, see this Court's March 18, 2020 Ruling and Order (Doc. 50).

On April 14, 2014, before renovations started on the hotel, LL Hotels obtained financing from Maple Bridge Funding, LLC through a promissory note dated April 14, 2014 in the amount of $1,050,000.00 (the "Tasman Note"). (Doc. 37-2.) On that same day, Maple Bridge Funding, LLC transferred the Tasman Note to Ability Insurance Company. (Doc. 37-2 at 45.)

Subsequently, on February 26, 2016, Ability Insurance Company transferred the Tasman Note to Tasman Holdings, LLC by an *Act of Transfer and Assignment of Promissory Note and Related Security without Recourse*. (Doc. 37-2 at 46–57.) At the time of the transfer, Tasman Holdings was managed by Michael Harbour ("Harbour").[2] The Tasman Note has been in default for non-payment since October 16, 2015. (Doc. 37-1 at ¶ 12.) Default interest, fees, and attorneys' fees continue to accrue. (Doc. 37-1 at ¶ 13; Docs. 37-2, 37-3.)

## 2. Harbour Note[3]

This lawsuit also involves a second note—the Harbour Note, which is a separate note from the Tasman Note and was executed roughly a year after the Tasman Note.  (Doc. 10 at 5.) Specifically, on or about February 5, 2015, LL Hotels executed a promissory note and mortgage on the hotel in favor of Michael Harbour, pursuant to which Harbour agreed to lend LL Hotels $1,000,000.00 (the "Harbour Note"). (Doc. 10 at ¶ 15.)

Some time thereafter, Defendants defaulted on this note too. Subsequently, on May 3, 2016, Harbour filed foreclosure proceedings against the hotel, and the order of executive seizure was filed on May 3, 2016 and signed on May 9, 2016. (Doc. 16-7.) Following these foreclosure proceedings, Tasman voluntarily cancelled the security interest in the hotel on August 9, 2016.

---

[2] *See* Doc. 37-1 at ¶ 2.
[3] While the Harbour Note is not the subject of the instant motion, the Court discusses it to the extent it is relevant for purposes of the present motion involving the Tasman Note.

(Doc. 37-2 at 58.) Tasman was not a party to the transaction or the foreclosure on the property secured by the Harbour Note and Mortgage. (Doc. 50 at 18, Doc. 55-1 at 2.)

### B.  Procedural Background

On October 25, 2018, Tasman and Harbour filed suit against Defendants on both the Tasman Note and the Harbour Note in the 19th Judicial District Court. (Doc. 1-2.) On November 30, 2018, Defendants removed the suit to this Court. (Doc. 1.)

Defendants then filed an Answer and asserted counterclaims against Tasman. (Doc. 10.) However, Defendants voluntarily dismissed their counterclaims on February 12, 2019 by *Notice of Voluntary Dismissal without Prejudice of Counterclaims*. (Doc. 17.) Defendants do not have any counterclaims pending against Tasman.

On June 3, 2019, a separate entity, LL Hotels, intervened in the lawsuit against both Tasman Holdings and Michael Harbour. (Doc. 31.) On August 23, 2019 Tasman filed a Motion for Summary Judgment (Doc. 37) seeking judgment on its claims against Defendants arising out of the Tasman Note and Guaranties. On March 18, 2020, this Court granted Tasman's motion for summary judgment finding that there were no genuine issues of material fact regarding Defendants' liability to Tasman under the Tasman Note and that it was entitled to judgment as a matter of law. (Doc. 50.) The *Ruling and Order* entered by the Court on March 18, 2020 provide in relevant part:

> IT IS ORDERED that Tasman Holdings, LLC's Motion for Summary Judgment (Doc. 37) filed by Tasman Holdings, LLC is GRANTED.
>
> IT IS FURTHER ORDERED that Defendants Louis Anthony Sirico and Lisa Grace Loud are liable *in solido* to Tasman Holdings, LLC, in the principal amount of $1,050,000.00, plus interest accruing through July 31, 2019 in the amount of $726,600.00, plus five (5%) percent late fees in the amount of $88,830.00, for a total of $1,865,430.00, plus interest accruing until paid.

3

(Doc. 50 at 19.)

On April 1, 2020, Tasman filed the instant motion to have this Court's March 18, 2020 Ruling and Order certified as final under Federal Rule of Civil Procedure 54(b). (Doc. 55.) In support of its motion, Tasman argues that this Court's Ruling resolved all of its claims and disposed of all of Defendants' affirmative defenses. Additionally, Tasman contends that the only remaining claims in this suit arise out of and relate to a separate note—the Harbour Note—entitling it to a final judgment with no just reason for delay. (Doc. 55.)

## II.  Discussion

### A.  Relevant Standard

Rule 54(b) is an exception to the rule that a final judgment is appealable only after the adjudication of the rights and liabilities of all parties to a proceeding. *Westmoreland v. Venice Marine & Outdoor Consultants, Inc.*, 2018 WL 2124040, at *1 (E.D. La. May 8, 2018). The rule provides in pertinent part:

> When an action presents more than one claim for relief–whether as a claim, counterclaim, crossclaim, or third-party claim–or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay….

Fed. R. Civ. P. 54(b).

Thus, to certify an otherwise interlocutory order for immediate appeal, a district court must make two separate findings under Rule 54(b):

> A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." Once having found finality, the district court must go on to determine whether there is any just reason for delay.

4

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 (1956)).

The Fifth Circuit has explained that Rule 54(b) "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.' " *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (quoting *PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996)). Rule 54(b) motions are rarely granted because the district court must "take into account judicial administrative interests" to " 'preserve[ ] the historic federal policy against piecemeal appeals.' " *Curtiss-Wright*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co.*, 351 U.S. at 438). Therefore, "[a] district court should grant certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; it should not be entered routinely as a courtesy to counsel." *PYCA Indus., Inc.*, 81 F.3d at 1421.

## B. Parties' Arguments

### 1. Plaintiff's Motion (Doc. 55-1)

Tasman contends that certification of this Court's March 18, 2020 Ruling and Order as final is appropriate under Rule 54(b) because it disposes of all the claims and defenses between Tasman and Defendants, and there is no just reason for delay. (Doc. 55-1.) In support, Tasman applies the two-part test set out in *Curtiss-Wright* to the facts before the Court.

Tasman argues that the first prong—the existence of a "final judgment"—is 'easily' met because this Court's Order: (1) makes a liability determination with respect to its claims under the Tasman Note and Guaranties, and (2) specifically describes the amounts owed to it for its claims.

(*Id.* at 4.) As such, the Order disposes of all issues of law and fact relevant to Tasman's claims as stated in its Complaint, satisfying the first prong. (*Id.*)

Tasman then argues that there is no just reason for delay. Tasman bases this argument on several factors, including equitable and judicial efficiency considerations. Regarding judicial efficiency, Tasman emphasizes that its' claims are separate and distinct from the other claims raised in this lawsuit. (*Id.* at 6 (quoting March 18, 2020 Ruling and Order, Doc. 50 at 18 ("Tasman is a separate legal entity from Harbour, and the only agreement between Tasman and Defendants is the Tasman Note and Guaranties…. The Tasman Note and the Guaranties represent the only contracts between the parties.")).) As such, Tasman argues that the Court's resolution of its claims will have no effect on the remaining claims raised by Michael Harbour and LL Hotels. (*Id.*) And in turn, the remaining issues to be adjudicated between Harbour and LL Hotels "will have no bearing on Defendants' liability to Tasman Holdings under the Tasman Note and Tasman Guaranties." (*Id.*)

For the same reasons, there is little to no risk of "piecemeal" litigation if the Court certifies Tasman's judgment as final. (*Id.* at 5–6.) Additionally, any future developments in this case will not in any way moot a final judgment certification since subsequent appeals by Harbour or LL Hotels would bear on different issues. (*Id.* at 6.)

Regarding equitable considerations, Tasman focuses on Defendants' alleged unstable financial position and solvency. Tasman represents that like the judgment in *Curtiss-Wright*, its' judgment is both liquidated and large and absent certification it will likely not be paid for an extended period of time. (*Id.* at 6–7, 8 (citing *Curtiss-Wright*, 446 U.S. at 11).) Tasman points out that "Defendants have already delayed the payment of their debts through a wholly improper bankruptcy case in which their discharge was barred for fraud. Certainly their efforts to avoid

payment evidences the prospect of the 'impair[ment of Tasman's] ability to collect on the judgment that would weigh in favor of certification.' " (*Id*. at 7 (quoting *Curtiss-Wright*, 446 U.S. at 11).)

Tasman also relies on *Offshore Marine, Inc. v. Associated Gas & Oil Co.*, No. 11-775, 2011 WL 4595251 (W.D. La. Sept. 29, 2011), in which the court reached a similar conclusion. In that case, the court granted Rule 54(b) certification of its prior ruling on the plaintiff's summary judgment motion. In doing so, the court explained that " 'a lender, having established his right to collect, has an interest in a prompt enforceable judgment,' and '[w]hen a debtor's financial position is precarious, the weight of that interest is increased, since waiting until the trial is over may make the right to collect worthless.' " (*Id*. at 7–8 (quoting *Offshore Marine*, 2011 WL 4595251, at *4).)

Finally, Tasman avers that absent Rule 54(b) certification, it will be unable to begin making collection efforts for years. It states:

> Tasman Holdings has been awaiting payment of the amounts owed under the Tasman Note since the loan's default in October 2015. As this Court is aware, Defendants already have gone to extreme lengths to avoid payment of the Tasman Note and Guaranties, including but not limited to filing a failed Chapter 7 bankruptcy action wherein the Defendants were denied discharge for fraud pursuant to 11 U.S.C. § 727(a)(4). Although their discharge was denied, their abuse of the bankruptcy process has already afforded them nearly two years of delay. And much like the defendants in *Offshore Marine*, Defendants' solvency remains questionable at best in light of their failed Chapter 7 bankruptcy. An additional delay for the entry of judgment may well render Tasman Holdings' right to collect worthless.

(*Id*. at 8–9.) Accordingly, Tasman concludes that justice requires this Court's March 18, 2020 Order to be certified as final. (*Id*. at 9.)

### 2. Defendants' Opposition (Doc. 59)

Defendants urge the Court to deny Tasman's motion for certification. (Doc. 59.) Defendants first argue that based on recent authority, the *Curtiss-Wright* factors compel a denial of Plaintiff's motion because "the pending claims are closely related and arise out of the same

factual allegations" as the ones at issue here. (*Id*. at 6 (citing *Stogner v. Sturdivant*, 2010 U.S. Dist. LEXIS 119461, at \*5–6 (M.D. Nov. 9, 2010)); *Rd. Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.*, 967 F.2d 145, 146, 151-52 (5th Cir. 1992).) Defendants explain that because their claims and the plaintiff-in-intervention's claims are tied to the same set of facts related to the conduct of Plaintiffs Tasman and Harbour, the risk of piecemeal litigation and multiple appeals is "extremely high here." (*Id*. at 7.)

Defendants then contend that Tasman's reliance on *Curtiss-Wright* is misplaced because "the logic of the decision actually supports Defendants' argument against certification." (*Id*.) As the Supreme Court's opinion makes clear, judicial economy is the court's primary concern in deciding to certify a judgment as final under Rule 54(b). (*Id*. at 8.) Defendants also urge the Court to not follow the Western District of Louisiana's decision in *Offshore Marine*. According to Defendants, this case is inconsistent with relevant authorities because "it concluded that the judgment on the promissory note was final despite acknowledging that the defendant 'makes a legitimate argument towards interrelationship.' " (*Id*. at 10 (quoting *Offshore Marine*, 2011 WL 4595251).)

Additionally, Defendants argue that this Court's March 18 Ruling and Order is "interlocutory and subject to revision," meaning it is not a "final judgment" as required by the first prong of *Curtiss-Wright*. (*Id*. at 8.) In support of this contention, Defendants cite to cases in which summary judgment orders were found to not be final judgments. (*Id*. (citing *In re Wood & Locker, Inc.*, 868 F.2d 139, 143 (5th Cir. 1989); *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018)).)

Defendants then address the second prong of the *Curtiss-Wright* test, whether there is a just reason for delay. Defendants argue that if the Court were to grant Rule 54(b) certification it would

allow Tasman to "begin immediate enforcement of a judgment, thereby complicating the remaining proceedings in this case, while also giving [Tasman] a significant practical advantage." (*Id*. at 10.)  Further, while Defendants "strongly disagree" with Tasman's characterization of the bankruptcy case:

> the salient point is that the Defendants' debt to it has not been discharged. Therefore, if a judgment were entered in Tasman's favor at an appropriate time, the Bankruptcy Case will not pose an impediment to its collection efforts. Nor does Tasman cite to any basis other than its skewed version of the bankruptcy proceedings for the Court to conclude that Defendants are taking any action that could jeopardize a potential recovery by Tasman. To the contrary, Defendants have been openly and actively litigating in this Court; they are not hiding. Further, Defendants Sirico and Loud are individuals, not insolvent corporate shells, and, if necessary, Tasman could seek to enforce any judgment against them for years without fear that they will stop being going concerns and become judgment proof entities.

(*Id*. at 9.)

Lastly, Defendants ask this Court to deny certification because it "could, and respectfully ultimately should" reconsider its summary judgment ruling. (*Id.* at 10–11.)

### 3. Plaintiff's Reply (Doc. 60)

Tasman first argues that Defendants failed to provide sufficient grounds for reconsideration of this Court's ruling on Tasman Holdings' motion for summary judgment. (Doc. 60 at 1–3.) Tasman reasons, "Defendants' request for reconsideration is not procedurally proper, as the request raises factual and legal issues separate from those in [Tasman's] Rule 54(b) motion and requires a separate analysis." (*Id*. at 2.)

Next, Tasman contends that Defendants' argument that recent authority compels the denial of Rule 54(b) certification is unsupported by relevant jurisprudence. (*Id*. at 3.) While Tasman does not dispute that courts are concerned about judicial economy, it maintains that there is no threat to judicial economy present in this case because its claims are not related to the remaining claims.

(*Id*. at 4–5.) Tasman also distinguishes Defendants' legal authorities on the grounds that:

> (1) Tasman Holdings' motion for summary judgment on its own claim was granted, (2) Tasman Holdings has no remaining claims pending against the Defendants, (3) the Defendants have not asserted any counterclaims, and (4) Tasman Holdings has a real and substantial interest in having its judgment certified so that it may begin the collection process.

(*Id*. at 5.)

Tasman represents that Defendants' analysis of *Curtiss-Wright* fails to distinguish the factors considered by the Supreme Court from those in the present case. (*Id*.) According to Tasman, Defendants failed to provide any reason why a Rule 54(b) certification would be judicially inefficient. Tasman then reiterates how its claims against Defendants "are totally separate from other claims remaining in this suit" and that "[a] judgment granting or denying Harbour's claim on the Harbour Note, for example, will have no bearing on Defendants' liability [to Tasman]." (*Id*. at 6.)

Tasman also avers that Defendants "fail to adequately dispel the harm that will come to [Tasman] if the Court denies this request for certification." (*Id*.) It then provides multiple reasons why it believes denial of its request for certification would harm its claims against Defendants. As explained in its original memorandum, Tasman's concerns are centered upon fear that any further delay in certification will result in its right to collect becoming worthless due to Defendants' efforts to conceal financial information and the fact that other creditors "will have already obtained their judgments and seized Defendants' assets." (*Id.* at 7–9.)

### C.  Analysis

#### 1. Final Judgment

To satisfy the first part of the *Curtiss-Wright* test, the Court "must first determine that it is dealing with a 'final judgment.' " *Curtiss-Wright*, 446 U.S. at 7 (citing *Sears, Roebuck & Co.,* 351

U.S. at 436). "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " *Id*.

Here, the first requirement is met. This Court's March 18, 2020 Ruling and Order disposed of all of the claims between Tasman and Defendants in this litigation. There are no claims or counterclaims pending between Tasman and Defendants. (Doc. 59 at 2, n.2; Doc. 60 at 5–6.) *See also Eldredge*, 207 F.3d at 740 (explaining that a district court can only certify an order as a Rule 54(b) judgment if it has "disposed of 'one or more ... claims or parties.' ") (quoting Fed. R. Civ. P. 54(b)). Accordingly, the Court finds the judgment an ultimate disposition of Tasman's claims, thus a "final judgment" for Rule 54(b) purposes.

## 2. No Just Reason for Delay

Once the Court has determined that it is dealing with a "final judgment", "the district court must go on to determine whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. "[A] district court must take into account judicial administrative interests as well as the equities involved." *Id*.

Consideration of sound judicial administration is "necessary to assure that application of [Rule 54(b)] effectively 'preserves the historic federal policy again piecemeal appeals.' " *Offshore Marine*, 2011 WL 4595251, at *5 (citing *Curtiss-Wright*, 446 U.S. at 8.) "Accordingly, consideration of whether the claims involved are separable such that no appellate court would have to decide the same issues twice is essential." *Id*.

The Court agrees with Tasman in finding that there is no risk of piecemeal appeals. As Tasman correctly contends, its claims against Defendants "are totally separate from other claims remaining in this suit." (*See* Doc. 51-1 at 6.) As the Court noted in its March 18, 2020 Ruling and

11

Order, the only matter between Tasman and Defendants is the Tasman Note and Guaranties. (Doc. 50 at 18.)

While Defendants generally assert that the risk of piecemeal appeals is high in this case because Tasman's claims are tied to the same set of facts as Harbour's and the plaintiff-in-intervention's claims, they fail to direct the Court to any specific issue that could cause piecemeal appeals. (Doc. 59 at 7.) And again, Harbour's claims arise out of the Harbour Note, a note that is separate and distinct from the Tasman Note. These notes were executed almost a year apart from each other, and the Tasman Note and Guaranties are the only contracts between Tasman and Defendants. (Doc. 50 at 18.) Given their separate nature, an appeal would not require an appellate court to decide the same issue twice.[4]  Moreover, there is no threat to judicial economy because a decision on any remaining legal issue in this case would not affect Defendants' liability to Tasman under the Tasman Note.[5]  Accordingly, the judicial administrative interests weigh in favor of certification.

The second component of the no-just-reason-for delay analysis is whether the equities weigh in favor of certification. Such equities include delay in payment, ability to collect on a judgment, and solvency of the parties. *Offshore Marine*, 2011 WL 4595251, at *4. The Supreme Court has explicitly found that if the debtor's financial position " '[was] such that a delay in entry of judgment on [plaintiff's] claims would impair [plaintiff's] ability to collect on the judgment, that would weigh in favor of certification.' " *Id*. (quoting *Curtiss-Wright*, 446 U.S. at 12.) Hardship is also recognized when the ruling at issue awarded substantial damages to the party moving for Rule

---

[4] "[T]he Supreme Court has explicitly recognized the fact that a similar claim remains before the district court does not necessarily preclude Rule 54(b) certification." *H & W Industries, Inc. v. Formosa Plastics Corp.,* 860 F.2d 172, 175 (5th Cir. 1988) (citing *Curtiss-Wright*, 446 U.S. at 8, n.2).
[5] Regardless of whether Harbour is successful on his claims arising out of the Harbour Note or whether LL Hotels' as a plaintiff-in-intervention is successful on its claims, it will have no effect on Defendants' liability to Tasman under the Tasman Note.

54(b) final judgment yet resolution on the remaining issues in the case was months, perhaps even years, away. *See Curtiss-Wright*, 446 U.S. at 11–12.

Here, the Court finds that considerations of fairness and justice warrant the entry of final judgment, so that Tasman is not subjected to unnecessary expenses and hardships that may arise through further protracted litigation.  Tasman, as a lender, "has an interest in a prompt enforceable judgment" and "when a debtor's financial position is precarious, the weight of that interest is increased, since waiting until the trial is over may make the right to collect worthless." *Offshore Marine*, 2011 WL 4595251, at *4.

To the extent Defendants' rely on *Stogner v. Sturdivant*, 2010 U.S. Dist. LEXIS 119461 (M.D. Nov. 9, 2010), the Court finds it unavailing. In that case, the plaintiff brought suit against employees of the Livingston Parish Sheriff's Office and the Livingston Police Department for conduct that occurred during a traffic stop.  *Id.* at *1–2. The plaintiff asserted claims under 42 U.S.C. § 1983 and state law. *Id.* The defendants moved for summary judgment on her § 1983 claims, which the court partially granted. *Id.* at *3. The plaintiff then sought Rule 54(b) certification of that ruling, which the court denied. *Id.* The court explained that the plaintiff's motion was "silent as to how [she] [was] in any danger of hardship or injustice" if her claims were not certified as immediately appealable. *Id.* at *5–6. The court also noted that the plaintiff had a remaining § 1983 claim and several state law claims against the defendants arising out of the same traffic stop. *Id.* Thus, the plaintiff's claims were closely related and arose out of the same set of factual allegations, a point even the plaintiff admitted. *Id.*

Unlike the plaintiff in *Stogner*, Tasman is not silent on the danger of hardship or injustice it will suffer if this Court's March 18, 2020 Ruling and Order is not certified as final.  In its motion, Tasman details how further delay in certification could result in its right to collect becoming

worthless since other creditors "will have already obtained their judgments and seized Defendants' assets." (Doc. 61-1 at 7–9.) It also cites to the Bankruptcy Court's denial of Defendants' discharge in bankruptcy as being indicative of Defendants' efforts to conceal financial information. (*Id.*; Doc. 60-2, Bankruptcy Memo. Op.)

Based on the above, the Court finds that Defendants' precarious financial position further militates in favor of certification. Defendants' "financial position [is] such that a delay in entry of final judgment ... would impair [Tasman's] ability to collect on the judgment[]…" *Curtiss-Wright*, 446 U.S. at 12. Further, even if waiting until the end of trial did not render Tasman's right to collect worthless, Tasman would still be subject to an unnecessary delay in payment. *See Offshore Marine*, 2011 WL 4595251, at *4. Thus, the Court believes that the potential delay in payment for an indefinite amount of time and the precarious financial position of Defendants, causes an increased interest in a prompt enforceable judgment.

Consistent with the Supreme Court's mandate, this Court has carefully "weigh[ed] and balance[ed] the contending factors." *Curtiss-Wright*, 446 U.S. at 12. The scales tip heavily in favor of certification. There is no just reason to delay entry of final judgment.

### D.  Request for Reconsideration

Defendants raise the argument that this Court "could, and respectfully ultimately should" reconsider its summary judgment rulings. (Doc. 59 at 11.) However, as Tasman correctly contends, this request is procedurally improper. "A request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). Defendants have failed to make any formal motion to request this Court reconsider its summary judgment ruling and order. When seeking to request a court to reconsider its ruling on a motion for summary judgment, a party should submit a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure no later than 28 days after the entry of the judgment.

*See* Fed. R. Civ. P. 59(e); *Basinkeeper*, 663 F. App'x at 291; *Templet*, 367 F.3d at 571. Because Defendants' request for reconsideration is not procedurally proper, the Court will not address this point any further.

### III.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Ex Parte Motion for Rule 54(b) Certification* (Doc. 55) filed by Plaintiff Tasman Holdings, LLC is **GRANTED**.

A separate judgment shall issue in accordance with this ruling.

Signed in Baton Rouge, Louisiana, on March 18, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**